## JEFFERSON v. WINKLER.

No. 916.   Opinion Filed July 12, 1910.

(110 Pac. 755.)

1. COURTS—County Courts — Jurisdiction—Title to Land. The county court by reason of section 12, art. 7, Const., has no jurisdiction in a probate proceeding by a guardian for an order of sale of his ward's real estate to hear and determine a claim of a third person to the real estate adverse to the ward.

2. INDIANS—Allotments—Sale by Probate Courts. By reason of sections 1, 2, 6, Act May 27, 1908, c. 199, 35 Stat. 312, pt. 1, the restrictions on the alienation of the allotments of minor freedmen and minor Indians of the Creek tribe of Indians, having less than half Indian blood, are removed, and allotments of such allottees may be sold under the order and supervision of the probate courts of the state.

3. INDIANS—Allotted Lands—Sales by "Minor." A minor within the meaning of said sections includes males under the age of 21 years and females under the age of 18 years, and the marriage of such a minor does not confer upon him or her the authority to sell his or her allotted lands independent of the jurisdiction and supervision of the probate courts of the state.

(Syllabus by the Court.)

*Error from District Court, Muskogee County; John H. King, Judge.*

Action by Felix L. Winkler against Ed Jefferson, guardian.. From an order granting a temporary injunction, defendant brings error. Order reversed, and petition dismissed.

Ed Jefferson, plaintiff in error, was appointed guardian for one Rebecca Moore, a minor Creek freedman, by the United States Court for the Western District of the Indian Territory prior to the admission of the state. She had received through the agency of the Dawes Commission the allotment of land to which she was entitled as a Creek freedman. On the 13th day of May, 1908, she was legally married to one Peter Johnson. On the 21st day of August, 1908, she and her husband executed a warranty deed, conveying to defendant in error that portion of her allotment constituting the land in controversy. About six months thereafter plaintiff in error, as guardian of said Rebecca Johnson, *nee* Rebecca Moore, filed his petition in the county court of Muskogee county praying for an order of sale, permitting and directing him to sell his ward's allotment. The order of sale was granted. At the hearing on the petition for order of sale, defendant in error appeared, set up his title, and objected to the court's granting the order to sell the land; but his objections were overruled and the order granted. Thereafter defendant in error filed his petition in the district court of Muskogee county, praying for an injunction against plaintiff in error, restraining him from selling said land under the order of the county court. A temporary injunction as prayed for was granted, and it is from said order that this appeal is prosecuted.

*A. S. McRea,* for plaintiff in error.
*M. L. Williams* and *N. A. Gibson,* for defendant in error.
*S. T. Bledsoe, amicus curiae.*

HAYES, J. (after stating the facts as above). Plaintiff in error first contends that the order of the court below granting the injunction was error, for the reason that defendant in error had an adequate remedy at law by appeal from the order of the county court overruling his objections to the sale and granting the order

of sale. This contention is without merit. Defendant in error by his appearance and objection in the county court to the application of plaintiff in error for the order of sale attempted to set up and have adjudicated in that court his claim of title to the land in controversy adverse to the ward of plaintiff in error; but the county court was without jurisdiction to hear and determine this contention, for, by section 12 of article 7 of the Constitution (Snyder's Const., p. 219), it is provided that the county court shall not have jurisdiction in any matter wherein the title or boundaries of land may be in dispute or called in question. The objections made by defendant in error in the county court required that court to try the question of defendant in error's title between him and the ward, which is in violation of the foregoing section of the Constitution. Since the county court was without jurisdiction to give defendant in error any relief in that proceeding, none could be granted by the district court or by this court on appeal from the order of that court. It is well settled that if the court *a quo* has no jurisdiction of the subject-matter of an action by appeal, an appellate court can acquire no jurisdiction thereof for the purpose of affording relief to the complaining party. *Timmons et al. v. Bonner & Long,* 58 Tex. 554; *Wise v. O'Malley,* 60 Tex. 588; *In re Estate of Garver v. Richardson,* 77 Mo. App. 459.

The other questions of law involved in this proceeding arise from the contention of defendant in error that the marriage of his grantor, Rebecca Johnson, terminated the guardianship of plaintiff in error, over both her person and estate, and that the act of Congress approved May 27, 1908, entitled, "An act for the removal of restrictions from part of the lands of the allottees of the Five Civilized Tribes, and for other purposes," (Act May 27, 1908, c. 199, 35 Stat. 312), conferred upon her the power to alienate her allotment without the supervision of any court of the state having probate jurisdiction, and that he acquired from her by her deed all of her title to the land described therein.

At common law the marriage of a female ward to a man of full age terminated the guardianship, both as to her person and

as to her estate. *Wise v. Norton,* 48 Ala. 214; *Price v. Peterson,* 38 Ark. 494; *Swihart v. Shaffer,* 87 Ind. 208. The marriage of a male ward, however, at common law terminates the guardianship of his person, but not of his estate. 2 Kent's Comm. 266; 21 Cyc. 51; Woerner's American Law of Guardianship, § 100. The entire question of the effect of the marriage of a ward upon the guardianship is regulated in this jurisdiction by statutory provisions, but the statute does not change the rule of the common law in so far as it applies to the guardianship of the female ward who has married an adult. In some other respects the rule of the common law is changed. Section 1820, Wilson's Rev. & Ann. St., provides that "every guardian appointed shall have the custody and care of the education of the minor and the care and management of his estate until such minor arrives at the age of majority, or marries, or until the guardian is legally discharged." Section 1865 provides that: "The marriage of a minor ward terminates the guardianship. * * *"

The foregoing sections are parts of an act of the Territorial Legislature approved December 22, 1890. It is apparent that under said sections 1820 and 1865 all guardianships are terminated by the marriage of the ward, and there is nothing in their language to indicate that the legislative intent was otherwise than that the guardianship should be terminated upon marriage both as to the person and the estate of the ward. Section 1820 specifically provides that the care and management of the estate of the ward shall devolve upon the guardian only until such minor arrives at the age of majority or marries. Section 3828, Wilson's Rev. & Ann. St., however, provides that:

"The power of a guardian appointed by the court is suspended only: First. By order of the court. Second. If the appointment was made solely because of the ward's minority by attaining majority. Third. The guardianship over the person of the ward by the marriage of the ward."

This section constitutes a part of an act of the territorial Legislature approved December 23, 1890. The third clause of this section, in so far as it terminates the guardianship over the

person upon the marriage of the ward, is a re-enactment of sections 1820 and 1865, *supra*. It is silent as to the effect of the marriage of the ward upon the guardianship over the estate. It does not by specific language continue such guardianship or terminate it, nor does the act of which it forms a part by specific language repeal sections 1820 and 1865 or any part thereof. If any repeal is effected, it must be by implication, but repeals by implication are not favored; and, to effect a repeal by implication, the statutes must be in irreconcilable conflict. Since these statutes deal with the same subject-matter and were enacted by the same Legislature at the same session and probably upon the same day, it is to be presumed that they are imbued by the same spirit and actuated by the same policy and they should be construed together so as to harmonize and give effect to their various provisions. *Houston & Tex. Ry. Co. v. State*, 95 Tex. 507, 68 S. W. 777. Nor does the conclusion that marriage of a minor ward terminates the guardianship and releases the estate of the ward from the control of the guardian render sections 1820 and 1865 inconsistent with section 1840 of Wilson's Revised and Annotated Statutes, which reads:

"When the income and estate under guardianship is insufficient to maintain the ward and his family or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose upon obtaining an order therefor."

This section indicates that some wards may have a family, but it does not necessarily follow that all wards who marry or have families continue wards until they attain their majority. Under the provisions of the statute, guardians for the person and estate of insane persons may be appointed. Such insane persons may be married and have families at the time they were adjudged insane and the appointment of the guardian made; and it was to provide for the maintenance of such persons and their families that the first clause of this section was enacted. If it did not follow from the foregoing sections that the guardianship of the

minor is terminated by the marriage of the ward, such would necessarily result as to the ward's real estate from section 877, Wilson's Rev. & Ann. St., which is section 1 of an act of the territorial Legislature, approved March 12, 1897 (Laws 1897, c. 8), which said section was in effect when the ward in this case conveyed to defendant in error, and reads as follows:

"All male persons of the age of twenty-one and all females of the age of eighteen years, and all persons *who have legally married of whatever age,* and all corporations to the extent authorized by law, may take title to, hold, mortgage, convey or make any contract relating to real estate or any interest therein." (Italics are ours.)

This statute specifically confers upon married persons of whatever age power to control and dispose by contract of their real estate or any interest therein. Such power in a married minor is inconsistent with the continuance of the power and authority of a guardian over a ward's real estate. But plaintiff in error insists that the foregoing provision of the statute does not apply to his ward because of certain treaty provisions between the United States and the Creek tribe of Indians and certain provisions of the act of Congress approved May 27, 1908 (Act May 27, 1908, c. 199, 35 Stat. 312). Section 4 of the Treaty of the Commission between the Five Civilized Tribes and the Creek tribe of Indians, approved March 1, 1901 (31 Stat. 861), provides that allotments to minors of the Creek tribe of Indians shall not be sold during the allottee's minority. Under this provision of the treaty Rebecca Johnson was without power either by contract of herself or order of the court to sell any part of her allotment during her minority. Section 7 of the same treaty prohibits any Creek citizen from alienating any lands allotted to him before the expiration of 5 years from the ratification of said treaty, except with the approval of the Secretary of the Interior, and makes inalienable the homesteads of any such allottee for a period of 21 years from said date. These provisions of section 7 of the original treaty were re-enacted in section 16 of the supplemental agreement with the Creek tribe of Indians, approved by the President June 30, 1902 (32 Stat.

500), except in the latter treaty the periods of time for which the restrictions· upon alienation are to obtain were made to date from the ratification of that treaty, instead of the former one. None of the foregoing restrictions upon the alienation of any part of the lands allotted to minors were removed until the passage of the act of May 27, 1908. Act April 21, 1904, c. 1402, 32 Stat. 189, removes all restrictions upon the alienation of lands of all allottees of either the Five Civilized Tribes of Indians who are not of Indian blood, except as to homesteads, and authorizes the removal of restrictions upon the alienation of all other allottees except on the homesteads with the approval of the Secretary of the Interior under such rules and regulations as he may prescribe; but said act expressly excepts from the operation of its provision all minors. Section 22· of the act of Congress approved April 26, 1906 (chapter 1876, 34 Stat. 145) authorizes the adult heirs of any deceased Indian to sell and convey the lands allotted to and inherited from such decedent, and, where there are minor heirs, such minor heirs are also authorized by said act to join with the adult heirs in the sale of such lands by a guardian duly appointed by the proper court; but this section has no application to the lands allotted to minors. Section 1 of the act of May 27, 1908, provides that:

"All lands, including homesteads of said allottees, enrolled as intermarried whites, as freedmen and as mixed blood Indians, having less than half Indian blood, *including minors,* shall be free from all restrictions. All lands, except homesteads of said allottees enrolled as mixed blood Indians having half or more than half and less than three-quarters Indian blood, shall be free from all restrictions. All homesteads of said allottees enrolled as mixed blood Indians having half or more than half Indian blood, *including minors* of such degrees of blood, and all allotted lands of enrolled full bloods, and enrolled mixed bloods of three-quarters or more Indian blood, *including minors* of such degrees of blood shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove restrictions wholly or in part under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." (Italics are ours.)

To ascertain the legislative intent of the foregoing section of the statute, considering its language alone, would present no great difficulty.. The restrictions with which this section of the act deals include restrictions upon all allotted lands of all members of the Five Civilized Tribes of Indians having less than half Indian blood. The second class includes restrictions upon all lands, except homesteads of all allottees having half or more than half, but less than three-quarters Indian blood. The third class includes the restrictions upon homesteads of all allottees having half or more than half Indian blood, and upon all the lands of all allottees having three-quarters or more of Indian blood. The restrictions referred to throughout this section are those restrictions upon the power of the allottee to alienate his allotted lands which are imposed by the provisions of the federal acts and treaties under which the distributive share of such tribal lands of each of the Five Civilized Tribes has been or is to be allotted to the respective members of said tribes. Such restrictions of the first and second classes named above are removed, both as to adults and minor allottees. The restrictions upon the third class are continued as to both adult and minor allottees until 1931, unless sooner removed by the Secretary of the Interior. In other words, the effect of this act upon the lands of allottees of the different tribes is to divide them with respect to the restrictions upon the alienation into two classes: First, those lands upon which the restrictions are removed; and, second, those upon which the restrictions are continued until 1931.

Rebecca Johnson is an allottee of the first class provided for in said section; and, after the act became effective, the restrictions upon her power to alienate her allotted lands were removed without any limitations or conditions imposed by federal act or treaty, and she held the same as other minor citizens of the United States and of this state hold their property, unless limitations were imposed thereon by subsequent sections of the act.

Section 2 reads as follows:

"That all lands other than homesteads allotted to members of

the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal:   Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise:  *And provided further,* that the jurisdiction of the probate courts of the state of Oklahoma over lands of *minors* and incompetents shall be subject to the foregoing provisions, and the term *minor or minors,* as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

Section 6 in part reads as follows:

"That the person and property of *minor allottees* of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

It is insisted by plaintiff in error that these two sections constitute in effect a proviso to that part of section 1 which removes the restrictions from minor allottees of less than half Indian blood and make the removal of such restrictions conditioned upon an order of some probate court of the state for the sale of such restricted property, until the minor, if a female, reaches the age of 18, and, if a male, the age of 21. In other words, that Congress intended to direct that the probate courts of the state should take and retain jurisdiction of the theretofore restricted lands of minor allottees until such minor should become of the age of 18, if a female, and of the age of 21, if a male, notwithstanding that such minor may marry before reaching such age.

It is contended by defendant in error on the other hand that the provisions of these two sections have no relation to, and do not affect, section 1. With this contention we cannot agree. Throughout the act of Congress commonly known as the "Enabling Act," under which the Indian Territory and the territory of Oklahoma were admitted into the Union as one state, the Indians of the

Five Civilized Tribes of the Indian Territory were treated as citizens of the proposed state, and are so treated by the provisions of the Constitution; but said enabling act contains a proviso which requires "that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territory (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed." Act June 16, 1906, c. 3335, 34 Stat. 267. By one of the provisions of the enabling act, the people of the state, acting through their representatives and delegates to the Constitutional Convention, were required to, and did, by an ordinance irrevocable, accept the terms and conditions of said act. It is unnecessary to comment upon the extent or limitation of the authority over the lands and property of such Indians that is by said provision of the enabling act reserved to the United States government; for, whatever be the extent of that authority or its limitations, we think it cannot be questioned that said authority reserved is sufficient to retain in the government of the United States jurisdiction over the restricted lands of said Indians to determine and provide how and in what manner such restrictions shall be removed; and that, until such restrictions are removed, the lands of said Indian minor allottees are not within the jurisdiction of the probate courts of the state with power in said courts to order the sale thereof for any purpose. Since the power to remove such restrictions is wholly within Congress, it may say upon what terms and conditions they will be removed, and under the supervision of what court or officer the sale of same shall be made.

Section 2 defines a minor to be a female under the age of 18 years or a male under the age of 21 years. It is true that this definition occurs in a proviso of said section 2, and we do not forget that one of the general rules of statutory construction ap-

plicable to provisos is that a proviso is intended to restrict or qualify some preceding matter and does not apply to matter which follows, and that it should be construed with reference to the immediately preceding part or clause of the section to which it is attached; but this rule is not without its exceptions, and where it is plainly intended that such proviso shall limit, qualify, or define other sections or provisions of the act than that of which it forms a part, the court should give it such meaning. 2 Lewis' Sutherland, Statutory Construction. If the proviso defining the term "minor" or "minors" had read, "And provided further that the jurisdiction of the probate courts of the state of Oklahoma over lands of said minors and incompetents, shall be subject to the foregoing provisions and the terms minor or minors shall include males under the age of twenty-one years and all females under the age of eighteen years," we think the foregoing general rule of construction applicable to provisos would apply, and said proviso would have application only to the provisions of section 2, but there is inserted in said proviso and immediately after the words "minor" and "minors" the phrase *as used in this act,* manifesting thereby, we think, an intent to define said terms as used in the various provisions of the act. It will be noted that by section 2 the United States government consents to and confers upon the probate courts of the state jurisdiction over the restricted lands of certain minor allottees for the purpose of leasing same for a period not to exceed five years. In order that no doubt might arise as to who was intended to be included in the term "minors" and that there should be no conflict between the courts of the state and the federal government in the exercise respectively of their jurisdiction over said minors, Congress deemed it necessary to define the term. There occurs in section 6 another proviso which reads: "And provided that no restricted lands of living minors shall be sold or incumbered, except by lease authorized by law, by order of the court or otherwise." Here, again, a limitation is placed upon the power of the state courts over the restricted lands of minors, and it will not be presumed that Congress in-

tended to define the term "minors" as used in section 2 in order that no confusion might arise, and leave the same undefined as used in the foregoing proviso in section 6, when the definition made in section 2 is in language making it applicable wherever the term occurs in the act. As before stated, the language of section 1, removing the restrictions upon lands of Indian allottees of less than half Indian blood, if read and construed alone independent of the other provisions of the act, constitutes an unconditional removal of said restrictions, and renders said allotted lands subject to the control of said allottees under the law of the state, just as other citizens of the state own and control their property. That said section is not to be construed and enforced independent of other sections of the act is clearly manifest by reading sections 3, 4, and 5. Section 3 prescribes how quantum of Indian blood and the age of such allottees shall be determined, and section 4 provides that said lands shall not be subject or held liable to any form of personal claim or demand against the allottees arising or existing prior to the removal of said restrictions other than contracts theretofore expressly permitted by law, and section 5 makes void any attempted alienation or incumbrance by deed, mortgage, contract of sale, or power of attorney made before or after the approval of the act affecting the title of lands prior to the removal of restrictions therefrom. Immediately following the foregoing sections, all of which have bearing upon the lands dealt with in section 1 of the act, occurs the provision of section 6 which provides that the property of minor allottees of the Five Civilized Tribes shall be subject to the jurisdiction of probate courts of the state, except as otherwise specifically provided by law. Just as the removal of restrictions effected by section 1 upon the lands of both adult and minor allottees of certain classes are limited by the provisions of sections 4 and 5, which render said lands not liable to certain claims or demands against said allottees or subject to certain contracts, deeds, or incumbrances that may have been executed by them, so the removal of restrictions upon the lands of minors is limited by the

requirement of section 6 that said property of minor allottees shall be subject to the jurisdiction of the probate courts of the state, and the term "minor allottees," as defined by section 2, means males under the age of 21 and females under the age of 18 years. In other words, construing all of the foregoing provisions of said act together, we think it was the legislative intent to provide that the allotted lands of freedmen and mixed blood Indians having less than half Indian blood, under the age of 18; if a female, and under the age of 21, if a male, may be sold under the supervision and jurisdiction of the probate courts of the state, and not otherwise.

It therefore follows that since Rebecca Johnson was not 18 years of age at the time she conveyed the land in controversy to defendant in error, and the sale to him was not made under the supervision and order of any probate court of the state, he acquired no title thereby, and has not sufficient interest in the lands in controversy to entitle him to maintain this action.

For the foregoing reason, this cause must be reversed, with direction that defendant in error's petition be dismissed.

All the Justices concur.