## CAMPBELL v. McSPADDEN *et al.*

No. 1635.    Opinion Filed July 18, 1912.

Rehearing Denied August 20, 1912.

(127 Pac. 854.)

1.  **INDIANS—Enrollment—Conclusiveness of Records.** The enrollment records of the Commissioner to the Five Civilized Tribes of Indians, as provided for in Act June 10, 1896, c. 398, 29 St. at L. 321, are conclusive evidence as to the age of citizens and freedmen allottees of said tribes.

2.  **SAME—Lands—Validity of Conveyance.** In a controversy as to which of two instruments of conveyance executed by an allottee is valid, where it appears from the enrollment records that such allottee was enrolled as fifteen years of age on September 1, 1902, and would therefore become 21 years of age September 1, 1908, and one of such instruments is executed prior and the other subsequent to such date, the latter instrument is held to convey the valid title.

(Syllabus by Harrison, C.)

*Error from District Court, Craig County;*
*T. L. Brown, Judge.*

Action by R. Vance McSpadden against L. B. Campbell and another. Judgment for plaintiff, and defendant L. B. Campbell brings error. Affirmed.

This action was filed against L. B. Campbell and D. H. Wilson October 14, 1908, by R. Vance McSpadden, who alleged that he was the legal and equitable owner of, and entitled to the possession of, a certain tract of land situated in Craig county, Okla., containing about 70 acres, the same being the homestead and surplus allotments of one Ellis Williams, a Cherokee freedman.

Defendant Wilson filed a separate answer and cross-complaint, alleging that he was entitled to the possession of a portion of the land sued for by plaintiff by virtue of a lease executed by the owner to him and dated June 20, 1908, said lease to run for a term of five years from date thereof. And for cross-action against his codefendant L. B. Campbell he claimed superior title and right to possession over his codefendant by virtue of the lease above referred to. Defendant Campbell filed separate answer and cross-petition, in which he alleged ownership in, and right to possession of, a portion of the land in controversy by virtue of a warranty deed dated July 30, 1906, and to the remainder of the tract by virtue of a five-year agricultural lease dated July 27, 1906, and by virtue of a subsequent agricultural lease dated May 16, 1908, on the homestead allotment, and a subsequent warranty deed dated July 29, 1908, to the surplus allotment.

Plaintiff, McSpadden, replied to each of the cross-petitions, alleging that the instruments through and under which both defendants claimed right to the land were executed before the grantor therein named was 21 years of age, and that such instruments of conveyance were therefore void because of grantor's inability to convey, and further claiming that the deeds under which he, plaintiff, claimed title, were executed subsequently to the execution of the instruments under which the defendants claimed, and after the grantor had reached the age of majority; a portion of the land in controversy, 30 acres, being the homestead allotment, and the remainder, 40 acres, being the surplus allotment of the said Ellis Williams. Plaintiff claimed under a warranty deed from Ellis Buffington dated September 3, 1908, and warranty deed from Ellis Williams, dated October 26, 1908, claiming that the freedman Ellis Williams and Ellis Buffington

was one and the same individual, and that the latter deed was made for the purpose of correcting the name of the grantor in the first deed.

D. H. Wilson claimed part of the land, the homestead allotment, by virtue of a five-year agricultural lease to him from the allottee Williams, dated June 20, 1908, and defendant Campbell claimed the surplus land by virtue of a deed executed by Williams, dated July 30, 1906, and a subsequent deed executed by said party July 29, 1908, and claimed the homestead allotment by virtue of a five-year agricultural lease, dated July 27, 1906, and a subsequent agricultural lease to the same tract, dated May 16, 1908.

The issues, being thus joined, were tried in November, 1909, resulting in a verdict and judgment in favor of plaintiff. From which judgment and order overruling the motion for a new trial, defendant L. B. Campbell brings error.

*W. H. Kornegay,* for plaintiff in error.

*W. P. Thompson,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). Though numerous errors are assigned by plaintiff in error, yet upon a study of the entire record, comprehending the entire case as a whole, it seems to us that the age of the grantor at the time of the execution of the various instruments under which the parties to this action claim title is decisive of the case. The entire case rests upon, and the rights of the parties are to be determined by, the age of the grantor Ellis Williams on the date of the execution of the instruments of conveyance under which title is claimed, regardless of whether or not errors were committed by the court in other matters.

We fully concur in the view expressed by the trial court, where during the trial of the case he says: "As I view the case now, the only question here is to determine just what age this negro was." In fact, this is the decisive question; for each of the deeds and leases through which the parties hereto assert title, or right of possession, seems to be regular and valid on its face, and binding in all other respects, except for the question as to

whether the grantor was of age at the time they were executed. It is agreed that, the grantor being a Cherokee freedman allottee, all restrictions as to his power to alienate his surplus allotments were removed from and after April 21, 1904, and that all such restrictions as to his homestead allotment were removed from and after July 27, 1908. Hence, if he was 21 years of age on or before April 21, 1904, he could convey valid title to his surplus allotment, and valid lease to his homestead allotment; also, on and after July 27, 1908, he could convey valid title to his homestead allotment. But until he became 21 years of age he could not convey either a valid deed or lease to either tract. Therefore, to determine the validity of the instruments under which the parties herein claim title, we must look to the record for evidence as to when he became of age. The grantor, Ellis Williams, testified: "I became of age on the 1st day of September, and he sent for me, said he wanted to buy it." This is all the parol testimony contained in the record as to when he became 21 years of age. No explanation was given as to how he knew he became of age on this date, and none was asked for by counsel. By way of impeachment, some oral testimony was introduced tending to prove the grantor had claimed to be, or had held himself out to be, 21 years of age at the time the deeds and leases held by Campbell, plaintiff in error, were executed; also, testimony as to grantor's having made an affidavit at the time of the execution of these deeds and leases that he was 21 years of age, and it was further claimed by defendant Campbell that there had been guardianship proceedings wherein Ellis Williams was one of the wards named in such proceedings and some records of such proceedings were introduced in evidence for the purpose of showing that the guardian had been discharged and the ward declared of age in September, 1906, which was prior to the date of the execution of the conveyance under which Campbell claimed.

As to the records of the guardianship proceedings, there is nothing contained in the records introduced conclusively showing that the grantor in the case at bar was one of the wards in such proceedings. But there was also introduced two certain copies of certain records of the Commissioner to the Five Civil-

ized Tribes, the first being introduced by plaintiff over the objection of defendant Campbell, and the second introduced by Campbell without objection on the part of plaintiff, both claiming to be a copy of the enrollment record which the federal statutes make conclusive as to the age of allottees. The copy introduced by plaintiff is as follows:

DEPARTMENT OF THE INTERIOR.
Commissioner to the Five Civilized Tribes.
Cherokee Freedman Roll.

| No. | Name | | Age | Sex | Census | Card No. |
|-----|------|--|-----|-----|--------|----------|
| 3000 | Williams, Alexander | (age fifteen) | 15 | M | 694 | |
| 3001 | Williams, Ellis | (age fifteen) | 15 | M | 694 | |

This is to certify that I am the officer having custody of the approved roll of Cherokee Freedmen, and that the above and foregoing is a true and correct copy of that portion of said roll appearing at number 3000 and 3001. Enrolled as of September 1, 1902. P. O. Vinita, Okla.
Louise Smith, Clerk,                 J. GEORGE WRIGHT,
                        Commissioner to the Five Civilized Tribes,
Muskogee, Oklahoma,                 By M. S. D. MOORE, Clerk.
October 25, 1909.

The introduction of this copy in evidence was objected to by defendant, Campbell, upon two grounds: First, that it was not properly authenticated; that is, that it was certified to by a clerk, and not by the commissioner, who, it is contended, is the custodian of the records. The other is that it is the enrollment record, and not the roll which Act May 27, 1908 (Act May 27, 1908, c. 199, 35 St. at L. 312), makes conclusive as to the age of the allottees, and that the foregoing is a copy of the roll and not a copy of the enrollment record. Section 3 of the act referred to reads:

"Sec. 3. That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantity of Indian blood of any enrolled citizen or freedman of said tribes and of no other person to determine questions arising under this act and the enrollment records of the Commissioner to the Five

Civilized Tribes, shall hereafter be conclusive evidence as to the age of said citizen or freedman."

Now the approved rolls of Cherokee freedmen, copy of which is in the state library, and which we have examined, do not show the date to which the ages of Cherokee freedmen were calculated. But the certificate above does show the date to which their ages, were calculated, and shows that the allottee, Ellis Williams, was enrolled fifteen years of age, as of September 1, 1902; hence we must conclude that the above instrument is not a copy of the "Rolls," but a copy of the "Enrollment Record," referred to in the act of Congress, and made conclusive as to the ages of those enrolled.

In the case of *Yarbrough v. Spalding*, 31 Okla. 806, 123 Pac. 843, this precise form of certificate was before the court, and was treated by the court as a copy of the enrollment record, and held to be conclusive as to the age of the allottee. Dunn, J., who rendered the opinion of the court in the above case, says:

"It was also provided that the rolls made by the Dawes Commission, approved by the Secretary of the Interior, should be conclusive evidence as to the quantity of Indian blood of any enrolled citizen or freedman, and that they should hereafter be conclusive evidence as to the age of the said parties in determining matters arising under the act. * * * It is asserted and admitted to be a matter of general knowledge that these people generally kept but few, if any, records showing their family history or ages, and that as a consequence any proof adduced at any time in any controversy is subject to all the fluctuations incident to ignorance or self-interest. This being true, Congress cannot be presumed to have been ignorant of these facts; and these ages, thus fixed by an impartial judicial commission, without interest to do aught else than with such light as it could obtain fix them correctly, were in the main more likely to be accurate than ages established at a time and under conditions where self-interest or ignorance would produce either deception or error. The stability of land titles is of paramount importance everywhere, and this wise and salutary statute of Congress will have much to do with permanently determining the same to a large quantity of this tribal land. Congress has not sought herein to make that which was false true, or to make that which was true false; the ages fixed were not for the purpose of establishing any rights whatsoever under the laws of the state; they were not conclusive of the age

of consent, of marriage or of the right to exercise the elective franchise; they refer solely to the determination of questions arising under the act. . The fact that some of these ages are manifestly inaccurately stated in the records in no wise changes or alters the rule laid down. The power of Congress to say upon what terms restrictions should be relaxed or removed was absolute and the act in this respect is in our judgment constitutional and valid."

Concurring in the conclusion of Justice Dunn, that the instrument in question is a copy of the record referred to in the act of May 27, 1908, and further concurring in his reasons for accepting same as conclusive evidence of the age of allottees, and in the light of the entire record before us, we think the jury was justified in finding that the allottee herein became of age September 1, 1908, that the instruments under which L. B. Campbell and D. H. Wilson claimed title were void because executed prior to such date, and that the deeds of R. Vance McSpadden, defendant in error, having been executed subsequent to such date, vested him with title to the land in controversy.

In our opinion the verdict should not be disturbed, and the judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.