# Thompson, Appellant, *v.* Craft.

*Equity—Specific performance—Option to sell coal—Condition— Refusal of wife to sign deed—Construction of written instruments.*

1. On a bill in equity to compel the specific performance of a contract to sell coal underlying defendant's land, it appeared that about a year prior to the filing of the bill the defendant had given an option in writing on the coal in question to a third person, conditioned that if defendant's wife refused to sign the deed "this option shall be null and void." Subsequently the defendant extended and renewed the option to the optionee for two short periods of time. Within the period covered by the second extension the optionee assigned his interest to the plaintiff, endorsing the assignment on the option and reciting in the assignment the second extension, and the fact that he had received ten dollars from the plaintiff. The defendant had full knowledge of this assignment, and the same day that it was made the plaintiff wrote on the back of the option a notice addressed to defendant to the effect that he had accepted the option. On the same day the defendant endorsed on the option the following acceptance: "I hereby accept notice of the acceptance of within option and contract of sale is made absolute, and I acknowledge receipt of ten dollars from defendant (naming him) on account of purchase money." The signatures of both plaintiff and defendant to these endorsements were followed by seals. Defendant's wife always refused to sign the deed for the coal, but plaintiff was always willing to accept a deed from defendant subject to the dower interest of the latter's wife. *Held,* (1) that the sale of the coal from the defendant to the plaintiff was an absolute one, and not conditional on the wife's signature; and (2) that plaintiff was entitled to a decree of specific performance against defendant to compel him to convey his own interest in the coal.

2. In such a case the word "absolute" in the acceptance by defendant is not to be ignored, but is to be given the meaning it fairly and ordinarily imports.

3. A word not plainly inserted in a writing by accident or mistake is never to be thrown out entirely while there is a plain and natural construction that can be given to it, not manifestly destructive of the general intent of the sentence.

4. In agreements between the same parties concerning the same matter, where the terms of the latter are inconsistent with those of the former, so that they cannot subsist together, the latter will be construed to discharge the former.

Argued October 14, 1912. Appeal, No. 178, Oct. T., 1912, by plaintiff, from decree of C. P. Greene Co., No. 109, in Equity, 1906, dismissing bill in equity in case of Josiah V. Thompson v. John S. Craft, Administrator of B. L. Craft, deceased. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity for specific performance.

HOLT, P. J., specially presiding, found the facts to be as follows:

### FINDINGS OF FACT.

First. That on the 22d day of March, 1904, and for several years prior thereto, B. L. Craft was the owner and in possession of a certain tract of land situate in Jefferson Township, Greene County, Pennsylvania, bounded by the lands of Jacob Haver and others, containing 155 acres and 61 perches.

Second. That on the 22d day of March, 1904, the defendant entered into a contract in writing with one W. F. Flenniken for the sale and conveyance unto the said Flenniken, his heirs and assigns, all the nine foot or river vein of coal in and under the said tract of land, with the right to mine and remove all and every part of the same, together with certain other mining privileges specifically mentioned in the said contract, at and for the price or sum of one hundred dollars per acre, payable as follows, one-third of the purchase money at the time of making

and delivery of the deed for said land, and the balance in two equal annual payments from the date of the said deed, with interest at the rate of five per cent per annum on the deferred payments, to be secured by a mortgage upon the premises; the said article of agreement containing a covenant that, "in case Mrs. Craft (who was the wife of the said B. L. Craft) refuses to sign deed this option shall be null and void"; also a covenant as follows: "It is expressly understood and agreed that if the first payment aforesaid is not made on the second day of April, A. D. 1904, or within five days thereafter, this agreement shall be considered as rescinded, and neither party shall be bound thereby."

Third. That while the said instrument of writing is in form a contract for the sale of the aforesaid coal, and mining rights, the parties to the instrument and J. V. Thompson, the assignee of the interest of the said Flenniken in said contract, treated the same as an option for the purchase of the said coal, mining privileges, etc.

Fourth. That on the 17th day of December, 1904, the said B. L. Craft extended the aforesaid agreement or option to purchase said coal and mining rights in writing on the back of said contract or option, as follows: "I hereby renew and extend the foregoing option to January 15, 1905. Witness my hand and seal this 17th day of Dec. 1904.

(Signed)   B. L. Craft."

Fifth. That prior to January 15, 1905, and during the time the said agreement of March 22, 1904, was a valid and subsisting contract between W. F. Flenniken and the said B. L. Craft, the said Flenniken called upon the plaintiff and offered to sell the coal, mining rights, etc., described in said agreement to the said Thompson, but no agreement of purchase and sale was then consummated.

Sixth. That the said B. L. Craft, on or about February 4, 1905, after the first extension of said option or contract had expired, being still the owner in fee and

in possession of the said lands, addressed a letter to the plaintiff and delivered the same to the said Flenniken, who, in turn, delivered the same together with an abstract of title of the said lands of the defendant to the plaintiff, the following being a copy of the said letter:
"J. V. Tomson

Sir:

Sende you the abstrect for you to examon if it all rite you can have the cole at the prise and turms that Mr Flanigan shoed to you if your not sadesfide with it you can returne it to me in ten days also if you except it I want it to take a copy from

B. L. Craft."

P. S.   the note of the Barnes Survay coms so neere the other survases you will have to take it as the Abstract cauls for it onely makes a few rods difernes

B. L. Craft."

Sixth. That prior to January 15, 1904, while the said contract of March 22, 1904, was a valid and subsisting contract between W. F. Flenniken and B. L. Craft, the said B. L. Craft and W. F. Flenniken called upon the plaintiff and offered to sell the coal, mining rights and surface privileges described in the said agreement of March 22, 1904, to the plaintiff, but no agreement of purchase and sale was then consummated.

Seventh. That the abstract aforesaid exhibited by the said Flenniken, together with the defendant's letter written on or about February 4, 1905, was an abstract of the coal, and mining rights contained in said agreement of March 22, 1904, and the rights or interest proposed to be sold by the defendant and said Flenniken to the plaintiff were the identical rights and interests described in the said contract of March 22, 1904; in other words, the plaintiff was seeking to purchase, and Flenniken and the defendant were offering to sell to the plaintiff, the rights of the said Flenniken as evidenced by the said contract of March 22, 1904.

Eighth. That on February 6, 1905, the said W. F.

Flenniken in writing on the back of the said agreement or option assigned the same to the plaintiff, the said assignment being in the following form: "February 6, 1905, B. L. Craft having by letter extended the within option to J. V. Thompson until February 14, 1905, for value received I hereby assign the same to said J. V. Thompson, and acknowledge receipt of ten dollars thereon. W. F. Flenniken. (Seal)"

Ninth. That on the same day the plaintiff gave notice to the defendant in writing on the back of said contract or option of his acceptance of the said contract or option of March 22, 1904, as extended by the said letter of the defendant, which notice of acceptance is as follows:
"B. L. Craft.

I hereby give you notice of my acceptance of within option as per terms therein, in accordance with your letter of February 4, 1905, reviving and extending said option ten days.

February 6, 1905.

J. V. Thompson.   (Seal)"

Tenth. That the defendant on the sixth day of February, 1905, accepted notice of the said acceptance in writing also endorsed upon the back of said option or agreement of March 22, 1904, which notice is in the following form:

"February 6, 1905.

I hereby accept notice of the acceptance of within option & contract of sale is made absolute & I acknowledge receipt of ten dollars from J. V. Thompson on account of purchase money.

B. L. Craft.   (Seal)."

Eleventh. That the only agreement that was made between the plaintiff and the defendant concerning any interest in the said coal and mining rights was that extending to the plaintiff the said option or agreement between Flenniken and the defendant.

Twelfth. That Mrs. Craft, the wife of the defendant, has at all times since the date of the said contract or op-

tion of March 22, 1904, refused to sign or execute a deed
for the said coal, mining rights and privileges mentioned
in said instrument of writing.

Thirteenth. That the defendant in good faith endeav-
ored to have his wife sign the deed for the said coal,
mining rights, etc., for the purpose of conveying the
same unto the plaintiff, and that she refused to sign the
same.

Fourteenth. That the plaintiff through his agent or
attorney also endeavored to have the wife of the de-
fendant sign a deed to the plaintiff for the said coal,
mining privileges, etc., but she refused to execute the
same.

Fifteenth. That the plaintiff made a demand upon the
defendant for a deed for the said coal, mining privileges,
etc., in accordance with the terms of the said agreement
or option of March 22, 1904, and the defendant refused
to execute and deliver a deed therefor to the plaintiff;
but said refusal so to convey on the part of the de-
fendant was because of the refusal of the wife of the de-
fendant to join in the deed therefor.

Sixteenth. That the defendant was at all times will-
ing to execute and deliver a deed for the coal, mining
privileges, etc., to the plaintiff, provided the defendant's
wife would sign a deed therefor.

Seventeenth. That on the fifth day of March, 1906,
the plaintiff through his agent tendered to the defendant,
in lawful and legal tender money, one-third of the pur-
chase money for the said coal, mining privileges, etc., at
the price of one hundred dollars per acre, with interest
upon the whole amount at six per cent. from February
6, 1905, and a mortgage for the other two-thirds payable
in two equal annual payments with interest from March
1, 1906, at the rate of five per cent. per annum as pro-
vided by the aforesaid contract; and at the same time
presented to the defendant a deed for the conveyance
of the said coal, and mining rights by the defendant to
the plaintiff, and requested and demanded its execution

and delivery by the defendant to the plaintiff, but the defendant declined to accept the said money and mortgage, and refused to execute and deliver a deed as requested, and still refuses either to accept the purchase money tendered or to execute and deliver a deed for the property; but such refusals as aforesaid were because of the refusal of the wife of the defendant to sign the deed for the aforesaid coal, etc.

Eighteenth. That the plaintiff has always been ready and willing to perform his part of the said contract of March 22, 1904, in accordance with the terms of said contract.

Nineteenth. That the defendant before the bill in this case was filed tendered to the plaintiff ten dollars in legal money, together with interest thereon, being the amount of purchase money received by the defendant from the plaintiff on account of the purchase money for the said coal, mining privileges, etc., but the plaintiff refused to accept the same.

The court held that the contract of sale was conditional upon the consent of Mrs. Craft to sign the deed, and as she had refused to sign it, the contract could not be enforced. A decree was accordingly entered dismissing the bill.

*Error assigned* was decree dismissing the bill.

*A. F. Silveus,* with him *W. J. Kyle,* for appellant.— The notice of acceptance dated February 6, 1905, given by Thompson to Craft, with Craft's acceptance of said notice, his receipt of ten dollars on the purchase money, and declaration that "the contract of sale is made absolute" vested the equitable title to the coal in dispute in the plaintiff, and right to the purchase money in the defendant, and thereafter Craft was the trustee of the legal title for Thompson, the same constituting a good and valid contract such as courts of equity will enforce: Sutter v. Ling, 25 Pa. 466; Siter's Appeal, 26 Pa. 178;

Russell's Appeal, 15 Pa. 319; Kramer v. Dinsmore, 152 Pa. 264; Watson v. Blaine, 12 S. & R. 131; Huhn v. Long, 2 Wharton 200; Stover v. Metzgar, 1 W. & S. 269; Mc-Keesport Machine Co. v. Ins. Co., 173 Pa. 53; McMillin v. Titus, 222 Pa. 500; Oswald v. Kopp, 26 Pa. 516.

The rule in Pennsylvania is that where the husband contracts to sell his own land without his wife joining in the contract of sale, he can be compelled to convey his title, notwithstanding his wife's refusal to sign the deed: Corson v. Mulvany, 49 Pa. 88; Harrigan's App., 1 Mona. (Pa.) 450; Burk's App., 75 Pa. 141; Waters v. Wolf, 2 Pa. Superior Ct. 200.

*F. W. Downey,* with him *R. F. Downey, Joseph Patton* and *C. W. Waychoff,* for appellee.—The condition in this option was made for the especial benefit of B. L. Craft, as it was a condition necessary for his relief in case his wife refused to sign the deed, and being a condition made especially for his benefit, the contract is only subject to be enforced at his option. To hold otherwise would be to nullify the condition completely. In this case the wife has refused to sign the deed, and we submit that the court below committed no error in declining to enter a decree of specific performance: Vanhorne v. Dorrance, 2 U. S. (2 Dallas) 317; Young v. Paul, 10 N. J. Eq. 401; Williams v. Edwards, 2 Simons 78; Barnes v. Rea, 219 Pa. 287.

The payment of a part of the purchase money alone is not such a performance of a contract as takes it out of the statute of frauds and perjuries, and when that alone has been established this court will not decree specific performance of the contract because restitution of that can be made: Allen's Estate, 1 W. & S. 383; Gangwer v. Fry, 17 Pa. 491; Parker v. Wells, 5 Whart. 153; Mc-Kee v. Phillips, 9 Watts 85.

OPINION BY MR. JUSTICE STEWART, January 6, 1913:
B. L. Craft, against whom the bill in this case was

filed, and whose legal representative since the former's death has been made defendant, on the 22d of March, 1904, by sufficient instrument in writing, granted to one Flenniken an option on certain terms for the purchase of coal underlying a tract of land, of which he was the owner, containing 155 acres and 61 perches, fully described in the grant, together with mining rights in connection therewith. The option was limited to fifteen days and was conditioned as follows: "In case Mrs. Craft refuses to sign deed this option shall be null and void." On the 17th of December, 1904, Craft renewed and extended the option to the 15th of January, 1905; and again further extended it to the 14th of February, 1905. Within the period covered by the last extension, on the 6th of February, 1905, Flenniken assigned his interest in the option to Thompson, the plaintiff, by endorsement thereon as follows: "Feby 6th 1905, B. L. Craft having by letter extended the within option to J. V. Thompson until Feby 14th, 1905, for value received I hereby assign the same to said J. V. Thompson & acknowledge receipt of ten dollars thereon." The letter here referred to from Craft to Thompson was without date, but it is admitted that it was written on the 4th of February, and its contents show conclusively that Craft then knew of pending negotiations between Flenniken and Thompson for a transfer of the option. In the letter Craft advises Thompson that he has sent him an abstract of the title to the land to examine, and tells him that if satisfied with it he can have the coal "at the price and terms" that Mr. Flenniken had shown him, and asking him in case of acceptance that the abstract be returned to him within ten days for the purpose of copying. Next in order of time is the following endorsement on the original contract signed under seal by Thompson: "B. L. Craft, I hereby give you notice of my acceptance of the within option as per terms therein in accordance with your letter of Feby. 4, 1905 reviving and extending the said option ten days." Then follows

the endorsement signed under seal by Craft: "Feby. 6, 1905, I hereby accept notice of the acceptance of the within option and contract of sale is made absolute & I acknowledge receipt of ten dollars from J. V. Thompson on account of the purchase money." Thompson having thereafter tendered to Craft the purchase money in accordance with the stipulated terms demanded the conveyance of the coal. The conveyance being refused, the present bill was filed to compel specific performance of the contract. The facts as we have stated them all appear in the bill. The answer denies no single material averment, but seeks to justify the refusal to convey on the ground that positive and persistent refusal on the part of the respondent's wife to join in the conveyance had rendered the contract null and void under its terms. The fact here asserted in regard to the wife's refusal was not questioned, nor was complicity therein on the part of the husband charged. Since the wife was not a party to the contract, she was strictly within her rights in refusing to join in the conveyance. The most, therefore, that could be required of Craft by way of performance would be a conveyance of the property subject to the wife's right of dower therein. Such conveyance the plaintiff is willing to accept in discharge of the contract, and asks that it be decreed him. This much he is clearly entitled to unless the condition in the original contract stands in his way. This states the only question in the case. In determining it, recourse must first be had to the contract as written. If that be intelligible and unambiguous, inquiry ends there, for the sole purpose of inquiry is to ascertain the intention of the parties, the law presuming that they meant just what they said. The contract we are here dealing with includes several instruments or writings written at different times but all parts of a whole, and hence are to be taken and construed together. The first was the original option to Flenniken. In express terms it was made conditional, depending on the grantor's wife joining in the convey-

ance; the condition failing the contract was to be at an
end and both parties released from obligation thereunder.
The other writings in the series that concern us are those
which evidence the final transaction, the endorsement
by Thompson of his acceptance, and the endorsement by
Craft immediately following and made upon the same
day.  The first was an agreement on Thompson's part
which bound him to take the property upon the terms
expressed in the option, but it still left the contract
conditional, for he was bound only to take on the con-
dition that the wife joined in the conveyance.  The other
was not merely a recognition by Craft of the legal effect
of the former, but it went further, and in express terms
declared the sale "absolute."   More than this, it ac-
knowledges a payment on account of purchase money in
connection therewith.  This was the final expression of
Craft's understanding of what the contract meant.  The
learned chancellor was of the opinion, in view of the
earlier provision of the contract, that the word "abso-
lute" as here used, was of doubtful meaning and could
be correctly understood only as the court was enlight-
ened by extrinsic evidence.  Considerable testimony was
accordingly taken, resulting in the following finding of
the chancellor: "The weight of the evidence is in favor
of the theory of the defendant, and we could find, and
do find from the evidence, that the optional contract as
extended by the letter of February 4th, 1905, was not
modified or changed so as to eliminate therefrom the
condition that the contract or optional agreement should
be void if the wife of the defendant should refuse to sign
the deed."  A dismissal of the plaintiff's bill followed.

In the view we take of this case a discussion of the
evidence which influenced the mind of the court is un-
necessary.  We pass it with the single remark that we
find nothing in it that makes for one more than the
other; indeed we find nothing in it that would be helpful
were outside help required.  The contract as written is
its own best interpreter, and it is sufficient in itself, we

think, to disclose the real understanding of the parties. It is only by giving to the word "absolute," as used by Craft in his last sealed expression, a different meaning from what the word fairly and ordinarily imports, or by ignoring it entirely, that other conclusion can be reached than that its purpose was to make unconditional that which had been conditional. The former is never allowed except as there is something to show that the word was used in an unusual sense; here there is nothing to indicate it. We are equally restrained from doing the latter, since it is a settled rule that a word not plainly inserted by accident or mistake is never to be thrown out entirely while there is a plain and natural construction that can be given to it, not manifestly destructive of the general intent of the sentence: Philadelphia v. River Front R. R. Co., 133 Pa. 134. The term "absolute" as here used, in itself indicates a contract in direct contradistinction to that created by the option to Flenniken. We have no reason to suppose that it was introduced through accident or mistake. Then why not give to it its plain and natural meaning? It occurs in the last of the series of writings constituting the contract, written nearly a year after the original conditional option had been given. It is another accepted rule of construction that in agreements between the same parties concerning the same matter, where the terms of the latter are inconsistent with those of the former so that they cannot subsist together, the latter will be construed to discharge the former. The present is a case in which this rule could very properly be applied, but the case stands in no need of it, the language of the contract is sufficient in itself to express a clear purpose to change the contract from a conditional one to one absolute. A consideration of such facts as are properly before us confirms us in the view that the construction we have given the contract gives effect to the intention of the parties. The respondent in his answer admits that for a year prior to the agreement with the plaintiff his

wife had positively and persistently refused to join in the conveyance. He does not even suggest that he had any reason to suppose when he made the contract absolute that her purpose had changed or would change. To the ordinary mind the contract with Thompson would have seemed a vain and useless thing under such circumstances, if it meant no more than an extension of the conditional option until the time fixed for the first payment of the purchase price, which was then rapidly approaching. Quite as irreconcilable with the claim now made that the contract meant no more than an extension of the optional contract would be the fact that part of the purchase price was accepted. The written contract and the situation and dealing of the parties with reference to its subject matter, reveal a purpose to purchase and sell whether the wife consented or refused.

The decree dismissing the plaintiff's bill is made the subject of the thirty-fourth assignment of error. In view of our construction of the contract this assignment must be sustained.

The decree is reversed, the bill reinstated, and it is ordered that a decree be entered in accordance with the view herein expressed, the costs of the proceeding to be paid by the appellee.