## EGAN v. INGRAM *et al.*

No. 5989.    Opinion Filed October 10, 1916.

Rehearing Denied December 12. 1916.

(161 Pac. 225.)

1. **INDIANS—Indian Lands—Disposal.** Under the act of Congress of May 27, 1908 (chapter 199, 35 Stat. 312), which became effective July 27. 1908, the allotted lands of a Cherokee Indian minor of nine thirty-seconds Indian blood are subject to a federal restriction upon the right of alienation during the minority of such an allottee, unless and until such alienation is duly authorized by the proper county court of the State of Oklahoma, in the exercise of its probate jurisdiction as permitted in this respect by said act.

2. **SAME—Minors—Powers of Courts.** Under the act of Congress of May 27, 1908, which became effective July 27. 1908, a male Cherokee Indian is a minor until he has attained the age of 21 years; and it is not within the power of the state to confer majority rights upon him so as to affect the federal restriction upon the right of alienation of his allotted lands during such minority.

3. **SAME—Effect of Attempted Conveyance.** Under the act of Congress of May 27, 1908, which became effective July 27, 1908, an attempted alienation of the allotted lands of a Cherokee Indian minor of nine thirty-seconds Indian blood, in violation of the federal restriction thereon, is "absolutely null and void."

(Syllabus by the Court.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by James Egan against John M. Ingram and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Davidson & Williams* and *L. M. Lane,* for plaintiff in error.

*Biddison & Campbell* and *O. S. Booth,* for defendants in error.

THACKER, J. The plaintiff in error will be designated as plaintiff and the defendants in error as defendants, in accord with their respective titles in the trial court.

The plaintiff, alleging possession and title in himself, brought this action on March 22, 1913, to quiet title in himself to lots 1 and 2 of section 1, township 20 north, range 13 east, in Tulsa county, Okla., against defendants, who, he alleges, assert some adverse right, title, and interest to this land under certain pretended conveyances, the nature of which he asks that they be required to disclose.

The defendant John M. Ingram, answering for himself, and the defendants L. D. Marr, Jr., and Emma C. Marr, joining in another answer for themselves, in the first count of their respective answers, make a general denial of the allegations of plaintiff's petition. The defendant Ingram in the second count of his answer alleges title and possession to a part of this land in himself. The defendants Marr in the second count of their answer allege title and possession in themselves, except that they allege that possession was wrongfully taken by plaintiff a short time prior to the commencement of this action and then wrongfully withheld from them. In the second count of each of these answers it is alleged by the defendants that plaintiff's claim is a cloud upon their respective titles; and they severally pray that these titles be quieted in themselves. In the answer of the defendants Marr there is also a prayer for the restoration of possession.

The undisputed evidence shows that Chilli Henson, a citizen of the Cherokee Nation, of only nine thirty-seconds Indian blood, on September 21, 1909, owned all of this land as a part of his homestead and surplus allotments;

that on said date he was a minor within about one year of his majority; that on said date the district court of Tulsa county made an order purporting to confer majority rights upon him under the Laws of 1895, pp. 180, 181 (sections 4427-4430, Rev. Laws 1910); that thereafter, upon the same day, he executed and delivered a general warranty deed, purporting to convey this land, for a consideration of $1,000 actually paid to him, to Ed. T. Egan, who, on September 3, 1910, executed and delivered a like deed, purporting to convey the same to the plaintiff; that on October 4, 1910, the said Chilli Henson, having attained his majority of 21 years in the meantime, upon a recited consideration of $500, of which only a small part was actually paid, executed and delivered to the defendant Ingram a general warranty deed, purporting to convey all of this land to said Ingram, who, thereafter, on the same day, executed and delivered a like deed, purporting to convey a portion of the same to the defendants L. D. Marr, Jr., and Emma C. Marr; that on February 20, 1913, the said Chilli Henson executed and delivered a quit-claim deed of all of this land to the plaintiff.

The evidence adduced in behalf of the plaintiff tends to show that his grantor and himself, in succession, were in continuous actual possession of this land after Chilli Henson executed his deed of September 21, 1909, and that neither Chilli Henson nor any one by whom he could have claimed title, at the time of his deed of October 4, 1910, had been in possession of the same under any claim of title, or of the reversion and remainder thereof, or had taken the rents and profits thereof for the space of one year before the execution and delivery of the latter deed.

The evidence adduced in behalf of defendants tends to show that neither the plaintiff nor his immediate

grantor had been in possession of any portion of this land when the deeds of October 4, 1910, were executed and delivered by Chilli Henson to the defendant Ingram, and by the latter to the defendants Marr, and that Chilli Henson was then, and at all times after receiving his allotment of the same, in the actual possession thereof; that upon the execution and delivery of the deed of October 4, 1910, the defendants took, and have since been in, the actual possession of this land, except for an intrusion by plaintiff upon that portion claimed by the defendants Marr a short time before this action was commenced.

The trial court gave judgment against the plaintiff and for the defendants, quieting the title in the latter and awarding to the defendants Marr the possession of their portion of the same, and plaintiff brings the case to this court for review.

If, on September 21, 1909, these allotted lands were subject to any federal restriction upon Chilli Henson's right to alienate which was violated by the deed of that date, that deed was "absolutely null and void" under the act of Congress of May 27, 1908, which took effect on July 27, 1908, and, being therefore subject to this attack, the judgment of the trial court should be affirmed. If, on September 21, 1909, these lands were, as expressly declared in the first section of said act of Congress, "free from all restrictions," that is, free from all federal restrictions, so that Chilli Henson, being a minor, was merely subject to the incapacity of minors in general in this state, and so that his conveyance was merely voidable upon his disaffirmance of the same during his minority, or within one year after attaining his majority "upon restoring the consideration to the party from whom it was received or paying its equivalent with interest," as provided by section

3973, Statutes 1890 (section 885, Rev. Laws 1910), the judgment of the trial court is wrong, and should be reversed. In other words, the principal question in this case is as to whether the act of Congress sets these lands absolutely free from all federal restrictions, or only upon condition, during the minority of such allottees, that their alienation or incumbrance is authorized by a county court of this state. In *Jefferson v. Winkler*, 26 Okla. 653, 110 Pac. 755, decided on July 12, 1910, this act of Congress was, for reasons therein fully set forth, construed as removing the federal restrictions on alienation or incumbrances during the minority of such allottees only upon the condition that such alienation or incumbrance should be authorized by the county courts of this state, to which end the exercise of the essential jurisdiction over the persons and property of such minors is permitted to such courts; and since that time there has been an unbroken line of decisions to the same effect. *Kirkpatrick v. Burgess*, 29 Okla. 121, 116 Pac. 764; *Gill v. Haggerty*, 32 Okla. 407, 122 Pac. 641; *Campbell v. McSpadden*, 34 Okla. 377, 127 Pac. 854; *Tirey v. Darneal*, 37 Okla. 606, 133 Pac. 614; *Tirey v. Darneal*, 37 Okla. 611, 132 Pac. 1087; *F. B. Collins Inv. Co. v. Beard*, 46 Okla. 310, 148 Pac. 846; *Bell v. Fitzpatrick*, 53 Okla. 574, 157 Pac. 334; *McKeever v. Carter*, 53 Okla. 360, 157 Pac. 56; *Truskett v. Closser*, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549.

In *Jefferson v. Winkler, supra,* as already stated in effect, this act of Congress is construed as if it had read:

"All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from all restrictions; provided, however, the allotted lands of such minors may be alienated or incumbered during the minority of such allottees only upon

the authority of the county courts of the State of Oklahoma, which courts shall, except as otherwise specifically provided by law, have jurisdiction of the persons and property of such minor allottees."

In *Truskett v. Closser, supra,* the Supreme Court of the United States, in commenting upon *Jefferson v. Winkler, supra,* said:

"In *Jefferson v. Winkler,* an Indian girl married when she was under 18, and while under that age conveyed her allotment. It was held, that under the general law of Oklahoma the marriage emancipated her, but that, notwithstanding, her conveyance was void, the act of May 27, 1908, prevailing over the state law. The reasoning of the court is directly antagonistic to that of appellants in the case at bar, the same contentions being urged in that case as in this. In other words, it was contended that section 1 of that act was absolute, and was not modified by section 2, and the court, considering all of the provisions of the act, was of opinion that the legislative intention was to provide that the allotted lands of freedmen and mixed-blood Indians of less than half Indian blood, under the age of 18 if a female, and under the age of 21 if a male, might be sold under the supervision and jurisdiction of the probate courts of the state and not otherwise. The court, therefore, decided, upon a consideration of the act of May 27, 1908, and of the laws of the state, that the latter, removing the disability of minority, do not extend to Indian minors as defined by the act of Congress. The decision has been followed in *Tirey v. Darneal,* 37 Okla. 606, 133 Pac. 614; also *Tirey v. Darneal,* 37 Okla. 611, 132 Pac. 1087. The construction has become a rule of property in the state, and we should be disposed to accept it as such, even if we had doubts of the construction of the act of May 27, 1908."

Section 5 of this act of Congress reads:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or

other instrument or method of incumbering real estate, made before or after approval of this act, which affects the title of the lands allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be *absolutely null and void.*"   (The italicization is ours.)

The foregoing cases also show that no qualification whatever attaches to the declaration in the above-quoted section in the act of May 27, 1908; that any attempted alienation or incumbrance of the allotted lands of Indian minors in violation of the Federal restrictions thereon are "absolutely null and void"; and, indeed, the use of the word "absolute" in this section excludes the possibility of allowing any qualification to that declaration.   *(Pearsoll v. Chapin,* 44 Pa. [8 Wright] 9, 14, and *Thompson v. Craft,* 238 Pa. 125, 85 Atl. 1107) as effectively as the use of the language that was employed in section 16 of the Supplemental Creek Agreement would do.

The plaintiff not only contends that the aforesaid order of the district court of September 21, 1909, conferred majority rights upon Chilli Henson, but he contends that it was necessary for the defendants to have pleaded his minority, etc.; but, of course, this cannot be so if, as we think, this land was, on September 21, 1909, subject to a federal restriction in respect to the minority of this allottee against alienation and his attempted alienation on that date was "absolutely null and void."

Where such allottee still has the consideration for such attempted alienation or incumbrance, or the proceeds of the same, it may be that a court of equity would refuse him the affirmative relief of adjudging such alienation or incumbrance void except upon condition that he do equity;

but no such reason exists for refusing such relief to a third party, holding a valid deed from such Indian minor for which he has paid a valuable consideration, against another party, claiming under an absolutely void deed from the same source.

The foregoing appears to be an obviously sufficient answer to every question presented for our review, and we have not thought it necessary to discuss to any considerable extent some of these questions.

For the reasons stated the judgment is affirmed.

TURNER, SHARP, and HARDY, JJ., concur.    KANE, C. J., not participating.