BRUNER *et ux.* v. COBB *et al.*

No. 2190.   Opinion Filed February 11, 1913.

Rehearing Denied April 5, 1913.

(131 Pac. 165.)

1. **DEEDS—Validity—Inadequacy of Consideration.** Ordinarily mere inadequacy of consideration is not sufficient ground, in itself, to justify a court in canceling a deed, yet when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances, to shock the conscience, and furnish satisfactory and decisive evidence of fraud, it will be sufficient ground for canceling a conveyance or contract, either executed or executory. The rule being based upon the theory that fraud, and not inadequacy of price, is the sole reason for the interposition of equity.

2. **SAME—Fraud—Evidence.** Whenever it appears that the parties to a trade have knowingly and deliberately fixed upon any price, however great, or however small, there is no occasion nor reason for interference by courts, for owners have a right to sell property for what they please; but where there is no evidence of such knowledge, intention or deliberation by the parties the disproportion between the value of the subject-matter and the price may be so great as to warrant the court in inferring therefrom the fact of fraud.

3. **SAME—Sufficiency of Evidence.** Milton Bruner, and Katie, his wife were ignorant Creek freedmen. Milton owned a certain 40-acre tract which he was desirous of selling. Katie owned an allotment of 160 acres, worth from $2,400 to $4,000. C., desiring to purchase land through his agent, P., entered into negotiations with Milton to purchase the 40-acre tract, agreeing to give him $150 cash and a good note for the balance. The deed was drawn and acknowledged before P., who was a notary public, and which, after acknowledgment by Milton and his wife, proved to be a conveyance for Katie's allotment, instead of Milton's 40-acre tract. Both Milton and his wife testify positively that they sold the 40-acre tract, and never at any time sold, or intended to sell, Katie's allotment. Held, that the inadequacy of consideration, under the rule announced in the preceding paragraph of this syllabus, together with the other cumulative incidents and circumstances detailed in the record, amounts to such constructive fraud as to require a cancellation of the deed.

4. **INDIANS—Power to Alienate Land.** A Creek freedman under eighteen years of age, although a married woman, cannot make a valid conveyance of her allotment, except under the direction of the county court; and a deed made without such authority is void.

(Syllabus by Robertson, C.)

*Error from District Court, Seminole County;*
*Robert M. Rainey, Judge.*

Action by Milton Bruner and Katie Bruner against T. S. Cobb and another to cancel a deed. From judgment for defendants, plaintiffs bring error. Reversed and remanded.

On October 14, 1912, a motion to dismiss the appeal herein was sustained, on the ground that the alleged errors of the trial court required the examination and consideration of the evidence introduced at the trial, and that, the referee, before whom the cause was tried, not having certified the evidence to the court,

and no bill of exceptions having been allowed, this court could not consider the alleged errors relied upon by plaintiff in error. This defect in the record was strenuously insisted upon by defendants in error in their brief, and was not denied in any manner by plaintiffs in error until after the order of dismissal had been entered and a petition for rehearing had been filed and oral argument had thereon, whereupon a certain agreement between counsel at the trial (which was embodied in the record) was, for the first time, called to the attention of the court by counsel for plaintiffs in error. The consideration given by the court to this agreement resulted in the granting of the petition for rehearing, and the former opinion, dismissing the appeal, hereby recalled and set aside and the appeal reinstated, and the cause will now be considered on its merits.

*Taylor, Prueitt & Sniggs,* and *J. A. Baker,* for plaintiffs in error.

*Crump & Fowler,* for defendants in error.

Opinion by ROBERTSON, C. (after stating the facts as above). This is an action by Milton Bruner and Katie Bruner, his wife, to cancel and set aside a certain warranty deed made by them on February 23, 1909, to T. S. Cobb for 80 acres of land in Seminole, and 80 acres of land in Okfuskee county. Cobb three days later sold the land to James E. Foreman, who is joined as a party defendant, but Cobb alone defends; Foreman resting his title on Cobb's deed, which is good if the deed to Cobb from the Bruners is valid. The Bruners, who are husband and wife, are Creek freedmen, and the land in controversy is the allotment of Katie Bruner. Plaintiffs in error rely for reversal of the judgment appealed from on four separate assignments of error, viz.: First. Inadequacy of price. Second. The deed was taken and acknowledged by the grantee's agent, and is therefore void. Third. Deception and fraud in obtaining the signatures of plaintiffs to said deed. Fourth. Katie Bruner, at the time of executing said deed, was under the age of 18 years, and any deed made by her while a minor was absolutely void.

It will be unnecessary to give separate consideration to the assignments above enumerated, for that the reasons advanced in behalf of each are so closely related one to the other as to be, in a measure, applicable to all; in other words, fraud and deceit being the gist of the complaint of plaintiffs in error, we will treat the assignments of error as above enumerated merely as subdivisions of one general charge of fraud, and will give to each subdivision of such charge such consideration as it merits.

It appears from the record that these plaintiffs in error, at the time this deed was taken, were ignorant negroes, the wife, especially, being a mere girl, wholly devoid of business experience, and possessed of no judgment or knowledge of business affairs. The husband owned a certain 40-acre tract, which he was desirous of selling, and with that intention approached George B. Paine, who was a notary public and justice of the peace at Wewoka, in Seminole county, and who, from his own testimony, was acting as the agent of Cobb, who at the time was county judge of Seminole county. Milton Bruner told Paine that he wanted $300 for his 40-acre tract. Paine, as agent for Cobb, finally agreed to give him $300 for it, one-half cash, the balance to be secured by good note. This conversation took place in the Campbell abstract office at Wewoka on February 23, 1909. Katie Bruner was not present at the time the deal was made, but was sent for by Paine to sign the deed with her husband. Both Milton and Katie swear positively that they sold Milton's 40-acre tract to Paine for Cobb, and that they did not have one word of conversation with him or any one else concerning Katie's allotment; that they had no intention of selling it, but supposed always that the deed they signed was for Milton's 40-acre tract. Paine paid Milton $150 in cash and gave him in addition a memorandum, signed by himself, to the effect that they had coming to them a deferred payment of $150 on the land sold by them. This memorandum did not describe the land in any way, nor did it bear any interest; no payor was named therein, and it was signed by Paine alone, without any reference to his capacity as agent for Cobb. The record affirma-

tively shows that Katie Bruner did not receive any part of the $150, or derive directly or indirectly any benefit therefrom. Cobb, at the trial, offered to pay into court the balance of the purchase price, to wit, $150. The undisputed testimony shows that the land was worth all the way from $2,500 to $4,000. The record also shows that the entire transaction was carried on between Milton Bruner and Paine; Katie Bruner at no time being consulted concerning the trade.

Plaintiffs allege that as soon as they discovered the deception practiced upon them they brought suit to cancel the deed; the record showing the action to have been commenced on March 26, 1909, the deed having been executed February 23, 1909. Ordinarily mere inadequacy of consideration is not sufficient cause to justify interference by a court of equity in a case of rescission of contract or annulment of deed; but where, as in the case at bar, the consideration given is so grossly inadequate as to shock the conscience and force one's mind to the immediate conclusion that the deed to the land was procured by fraud it not only is the right but the positive duty of a court to interfere and place the parties, especially the innocent and injured one, in the position he was in before the transaction occurred, and it is a matter of no moment whether the fraud was occasioned by the active, deceitful representations, connivance, and acts of him who receives the benefits of the fraudulent transaction, or whether the result was reached on account ·of the mental incapacity and want of business ability of the one defrauded. The result in either instance is the same; the difference in the moral turpitude involved being only of degree.

The undisputed testimony in this case shows that· Cobb first sent one Coodie Johnson (who, from the record, seems to be a handy sort of a fellow and a ready witness), a few days before the deed involved herein was executed, to the Bruners to procure a deed for the land; that Cobb gave Johnson $150 with which to purchase the same; that Johnson offered Katie $75 for a deed, but that she refused to take it. Three or four days later Paine, at Cobb's suggestion, put the deal through with

Milton Bruner, and gave him $150 and the purported duebill, hereinbefore mentioned,. and which was worthless and of no binding effect on anybody. This is all that Cobb pretends to have given for the 160 acres, although the deed imports a consideration of $800. None of the witnesses valued the land at less than $2,400, and there is testimony to the effect that it was worth $4,000; $3,000 being the fair average value thereof.

When we consider all the facts and circumstances surrounding this transaction, the official position held by Cobb, and his standing in the community, his superior intelligence and official influence, the fact that he was desirous of procuring this land, and had made other attempts to secure a deed thereto, the further fact that Paine, a justice of the peace and the notary who took the acknowledgment to the deed, and who was Cobb's agent, engineered the deal and paid the money and executed the so-. called duebill, which, according to the uncontradicted evidence, was to have been a good note, but which, as we have seen, was a worthless piece of paper, not binding on any one, and the further fact that the Bruners belonged to an inferior race, were ignorant and illiterate, possessed of no knowledge or experience in such matters, to say nothing of their contention that they had in mind only the sale of Milton's 40-acre tract, and not the allotment of Katie, we are forced to the conclusion that the consideration given for the land was so grossly inadequate as to amount to constructive fraud, and of such character and degree as to require the cancellation of the deed. We might content ourselves by saying, and the record would fully warrant such conclusion, that the inadequacy of the consideration, of itself, free from any other fact or circumstance, is sufficient to constitute constructive fraud of such magnitude as to require the cancellation of the conveyance; but in this case we are not required to base our judgment upon this lone conclusion, for the record is full of other inequitable facts and circumstances that, to our mind, are so cumulative in their character and corroborative of the above conclusion as to leave no room for doubt in the mind of any fair-minded man.

In volume 2, Pomeroy's Equity Jurisprudence (section 926 *et seq.*), this subject is treated in an able and exhaustive manner, and the general rule there laid down for cases of this sort seems to be that, while mere inadequacy of consideration is not sufficient ground, in itself, for refusing the remedy of specific performance, yet when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances to shock the conscience and furnish satisfactory and decisive evidence of fraud, it will be a sufficient ground for cancelling a conveyance or contract, either executed or executory. Section 927. This rule is based upon the theory that fraud, and not inadequacy of price, is the sole and only reason for the interposition of equity. In the note to this section in the treatise above referred to, it is said:

"The rule had its origin at a time when fraud was generally inferred by presumptions of law, and often by conclusive presumptions. In the present condition of the law on the subject of fraud, this mode of formulating the rule seems to be erroneous. The principle is now almost universally adopted that fraud is a *fact* inferred, like other conclusions of fact, from the evidence; no rule of law can, therefore, be laid down as to the amount of inadequacy necessary to produce the resulting fraud. Inadequacy of consideration may be evidence of fraud, slight or powerful, according to its amount and other circumstances. When it is satisfactory and decisive evidence, when from the proof of inadequacy the court or jury are convinced that fraud as a fact did exist, then the relief is granted. Instead, therefore, of repeating the usual formula which has been handed down for generations, that the inadequacy must be conclusive evidence of fraud, I have said in the text that it must be satisfactory and decisive evidence; the former mode represented fraud as the result of a conclusive legal presumption; the latter treats it as a conclusion of fact drawn from the evidence, and is therefore in perfect harmony with the theory which now prevails in most, if not all, of the states. The following seems to be the true rationale of the doctrines concerning inadequacy of price. Whenever it appears that the parties have knowingly and deliberately fixed upon any price, however great, or however small, there is no occasion nor reason for interference by courts; for owners have a right to sell property for what they please, and buyers

have a right to pay what they please. See *Harris v. Tyson*, 24 Pa. 347, 360, 64 Am. Dec. 661; *Davidson v. Little*, 22 Pa. 245, 247, 60 Am. Dec. 81. But where there is no evidence of such knowledge, intention, or deliberation by the parties, the disproportion between the value of the subject-matter and the price may be so great as to warrant the court in inferring therefrom the *fact* of fraud. Such a gross inadequacy or disproportion will call for explanation, and will shift the burden of proof upon the party seeking to enforce the contract, and will require him to show affirmatively that the price was the result of a deliberate and intentional action by the parties; and if the facts do prove such action the fact of fraud will be more readily and clearly inferred."

Ordinarily, if there is nothing but mere inadequacy of consideration, the case must be extreme in order to call for the interposition of equity. Volume 3, Pomeroy's Eq. Jur. par. 928. As was said above, we would be fully justified in holding that the consideration given in this case, to wit, $150 cash and a worthless duebill, for land worth $3,000 would bring the case clearly within the rule hereinabove referred to; but we are not required to base our conclusion on this one item alone. The whole transaction is so intimately and completely charged with other inequitable instances, incidents, and circumstances as to absolutely preclude any other conclusion in the minds of honest men. Thus the record shows that Paine, the notary public who drew the deed, and who took the acknowledgment of the grantors, was Cobb's agent for the purpose of purchasing the land; that he opened negotiations leading up to the execution and delivery of the deed with Milton Bruner, who testifies positively that he never talked with Paine about selling Katie's allotment; that after the deed had been drawn and the trade made he (Paine) sent Milton to get Katie, who was at the company store in another part of town, in order that she might sign it; that he caused Milton to sign the deed first, and Katie to sign after him; that he paid the money to Milton, and not to Katie; that Sanders Sancho was sent to the Bruners and talked with them of and concerning the sale of Milton's land and not Katie's allotment. The fact that Milton did not know the description of the

land by number, but relied upon Paine to examine the map and secure therefrom the proper description is also a circumstance worthy of note. The uncontradicted evidence that the land was worth not less than $2,400, and from that to $4,000; the fact that the parties were not of kin, and there was no intent on the part of the Bruners to bestow on Cobb any bounty or gift—these and many other circumstances, to our minds, bring this case clearly within the rule above referred to and require the cancellation of the deeds complained of in the petition of plaintiffs in error. Aside from all this, the evidence clearly shows that Katie, at the time she executed the deed, was under the age of eighteen years, and therefore incapable of conveying her allotment. There is much positive and competent testimony in the record to the effect that she was under eighteen years of age, and not a single word of competent evidence that she was over that age. Coody Johnson (Cobb's man Friday) testified that when he went to the Bruners and negotiated a sale of the land he offered them only $75 of the $150 which Cobb instructed him to give for the reason that he wanted to wait a few days to get a census card from the Dawes Commission, in order to ascertain Katie's age (Record, p. 32), and yet (on page 44 of the record) he testified that he had known her for sixteen years, and that she was five or six years old when he first saw and knew her. It is on testimony such as this that the referee held that she was over eighteen years of age, notwithstanding the positive testimony of Katie's mother, her stepfather, and herself that she was born on March 11, 1891. Ordinarily, where there is a conflict in the testimony on any material fact, the finding of a referee will not be disturbed, if there is any testimony reasonably tending to support the same. We do not think there is any testimony in the record reasonably tending to support the finding, and we conclude that Katie Bruner was not eighteen years of age on February 23, 1909, the day the deed was signed, and that therefore the same is void on that account. This question has been settled in this state by the decision in *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755.

See, also, to the same effect, *Gill v. Haggerty,* 32 Okla. 407, 122 Pac. 641.   Katie Bruner, being a Creek freedman under eighteen years of age, could not make a valid conveyance on the date the deed herein complained of was executed, and, the sale not having been made under the direction of the county court, the deed is therefore necessarily void.

This last conclusion is not only corroborative evidence of the fraudulent intent of Cobb in the premises, but, in itself, is proof conclusive of the invalidity of the deed.   It therefore becomes the plain duty of this court to give to these plaintiffs in error the relief which they are clearly entitled to, but which was denied them by the referee and the trial court.   It seems to be a common practice in the part of the state from which this case comes for unscrupulous and designing men to prey upon the ignorant and defenseless, and in many instances the helpless Indians and freedmen.   These unfortunate classes have our undivided sympathy, for, with an intelligent and scheming white man, they have an unequal chance, even at the best; but when to this unequal chance is added the dishonesty of public officials, on whom these simple people have a right to rely implicitly for fair dealing and protection, and the duplicity and treachery of those of their own kith and kin, it is next to impossible to prevent them from being most shamefully mistreated and robbed.   Ignorant freedmen (negroes), such as plaintiffs in error, have a right to rely upon honesty of purpose and fair dealing at the hands of white men, and this is doubly true as to those who hold official positions of trust and honor; they have been taught to depend upon the superior intelligence and integrity of the white race; and while the law recognizes no distinction of race or color, and is not, generally speaking, the guardian of the ignorant, yet it will at all times, especially in such cases as the one at bar, throw its protecting arms about the weak and defend their rights against the wicked designs of the strong, when the object of these designs is to take an unfair and undue advantage of their weakness and ignorance.   We feel that the facts detailed in the record in the instant case are such

as to demand at our hands the relief prayed for by plaintiffs in error. We cannot think that the motive which prompted the giving of $150 cash and the worthless duebill to Milton and Katie Bruner for 160 acres of land worth $3,000 (even if defendants' story be true) is of such character as will appeal very strongly to honest men; and when we take into consideration the probability of the truthfulness of Bruners' story, to the effect that they sold only Milton's 40-acre tract, and not the allotment of Katie, words fail us in adequate denunciation of the acts of these persons who are responsible for the present condition. Katie not having received any of the consideration, is not required to return the same, or any part thereof. *Gill et al. v. Haggerty, supra,* and cases therein cited.

Having reached these conclusions, it therefore necessarily follows that the judgment be reversed, set aside, and held for naught, and the cause remanded to the district court of Seminole county, with instructions to enter a judgment canceling and setting aside, fully and completely, the deed executed by Milton Bruner and Katie Bruner to T. S. Cobb on February 23, 1909; also the deed executed to J. E. Foreman on February 27, 1909, by T. S. Cobb and Lillian Cobb, as set out and described in the petition of plaintiffs in error in the court below.

By the Court: It is so ordered.