### BALTHROP v. CLARK, Adm'r.

No. 12714—Opinion Filed Jan. 15, 1924.

**1. Indians — Invalidity of Leases by Full-Blood Allottee—Lack of Approval.**

Where a valid lease by a full-blood Mississippi Choctaw Indian of a portion of his surplus allotment is made to run for five years for agricultural purposes and is assigned, and after such assignment and before the lease expires, two other leases for agricultural purposes, covering the same premises, are made to the assignee, one enlarging and extending the term of the original lease by the space of approximately two years, and the other by the space of approximately three years, neither of which was approved by the authority of the Secretary of the Interior, both of said leases are void because in violation of sections 2 and 5 of the act of Congress approved May 27, 1908.

**2. Same—Liability of Occupant for Use and Occupation.**

An occupant of restricted Choctaw Indian lands under agricultural leases that are void because the same were executed in violation of the laws of the United States regulating the leasing of such lands for agricultural purposes can obtain no right or interest thereunder as a tenant at will or from year to year under state law or upon equitable grounds, and is liable to the owner for the fair value of the use and occupation of the premises during the period of unlawful occupancy.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Love County; Thos. W. Champion, Judge

Action by B. C. Clark, administrator of the estate of Austin Jim, deceased, against W. M. Balthrop for possession, cancellation of leases, and for rents. Judgment for plaintiff, and defendant appeals. Affirmed.

Sigler & Jackson, for plaintiff in error.

W. H. Woods and S. W. Turk, for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of McClain county, Okla., by B. C. Clark, as administrator of the estate of Austin Jim, deceased, defendant in error, plaintiff below, against W. M. Balthrop, plaintiff in error, defendant below, for the cancellation of certain agricultural lease contracts covering the northwest quarter (N. W. ¼) of the northeast (N. E. ¼) and the northeast quarter (N. E. ¼) of the northwest quarter (N. W. ¼) of section sixteen (16), township seven (7) north, range two (2) east, located in Love county, Okla., for the possession of said property and for the sum of $1,930, as rent on said land for the years 1913, 1914, 1015, 1916, 1917, and 1918. The parties will be hereinafter referred to as they appeared in the court below.

It appears that Austin Jim, deceased, was a full-blood Mississippi Choctaw Indian and had received the land above described as a part of his surplus allotment.

On the 11th day of March, 1912, he executed an agricultural lease to Porter Earhart for the term of five years from March 11, 1912, by which he was to receive the rental of $40 per annum, due and payable on the 11th day of March of each year during the life of the lease.

On December 18, 1912, Porter Earhart sold this lease to the defendant.

On the 1st day of March, 1913, and during the subsistence of the Earhart lease, Austin Jim executed to the defendant an agricultural lease on the land for a period of five years, beginning January 1, 1914, and ending December 31, 1918, for a consideration of $195.

On December 17, 1914, still another lease was made between the same parties for a period of five years, beginning on that date and ending December 17, 1919.

In his first amended petition plaintiff alleged that Austin Jim, a full-blood Mississippi Choctaw Indian, had died, and that B. C. Clark had been appointed administrator of his estate, and that he had received the

land above described from the Choctaw Tribe of Indians as a portion of the surplus allotment; that the defendant had been in unlawful possession of said land since March 1, 1913, holding said land under two overlapping lease contracts, one dated March 1, 1913, and one dated December 17, 1913; that Austin Jim was an uneducated, ignorant, incompetent full-blood Indian, and that the defendant secured the execution of the lease contracts unlawfully and fraudulently, and that the rentals reserved in said lease contracts and paid to Austin Jim were grossly inadequate; that said lease contracts had not been approved by the Secretary of the Interior, and were void, and prayed judgment for the cancellation of said leases, for possession of the land, and for $2,100, which he alleged was the fair rental value of the land for six years, less $170 which it was alleged had been paid.

The answer of the defendant was a general denial. A jury was waived and the cause came on for trial on the 30th day of March, 1920, before the court.

The trial resulted in a judgment for the plaintiff, finding that the lease contracts under which the defendant claimed were void, and that the plaintiff should recover the sum of $600 as rent. From the judgment so rendered, the defendant brings the cause regularly on appeal to this court.

It was stipulated between counsel at the trial as follows:

"It is agreed between the parties hereto that Austin Jim was a full-blood Mississippi Choctaw Indian, roll number 459; that he was an adult at the time of his death and a male; that B. C. Clark is the duly appointed, qualified and acting administrator of the estate of Austin Jim and has been since the 18th day of March, 1918, appointed in the county court of McClain county, Oklahoma, and that the land in controversy is a part of the surplus of Austin Jim, deceased, and that the restrictions had never been removed from the alienation of any of said surplus lands described and that neither of the leases described in the petition were approved by the Secretary of the Interior or any Agent of the Interior."

It is the contention of the defendant that neither the petition nor the proof introduced by the plaintiff in support thereof is sufficient to support the judgment and the judgment must, therefore, be reversed.

The argument is that it appearing both in the petition and in the evidence introduced that Austin Jim in his lifetime permitted the defendant to remain in possession of the land under his lease without objection, and received the rentals provided for therein without complaint, that thereby the defendant, under the provisions of section 3783, Revised Laws 1910, became a tenant at will of Austin Jim, in spite of the fact that the lease contracts may have been void in their inception for lack of approval by the Secretary of the Interior; that no sufficient allegation of fraud and misrepresentation being made in the petition or shown in the proof, the rights and liabilities of the parties must be governed and controlled entirely by the law applicable to a tenancy at will or from year to year. This contention cannot be sustained. There is evidence in the record tending to show that the leases were obtained for an inadequate consideration and by reason of a lack of intelligence and business experience on the part of Austin Jim, but irrespective of whether or not Austin Jim was actually overreached in the transaction, the conceded facts are that the leases themselves were overlapping leases, and were not approved by the Secretary of the Interior as required by sections 2 and 5 of the act of Congress of May 27, 1908.

Both the lease of March 1, 1913, and the lease of December 17, 1914, were executed and delivered during the continuance of a prior, valid, and subsisting lease, and the plain effect of these leases was to extend the period of the original lease to cover a period of time unauthorized by the act of Congress referred to above. By the lease of March 1, 1913, the period of the original lease was enlarged and extended by the space of almost two years, and by the lease of December 17, 1914, by the space of nearly three years.

In the case of Dowell et al. v. Brown, Guardian, 86 Okla. 204, 208 Pac. 220, our court said, in the first paragraph of the syllabus:

"Where a valid lease by a Creek citizen of her restricted allotment is made for agricultural purposes, and before it expires two other leases for agricultural purposes are made to the same lessee, to begin in the future, one for a period of one year and the other for a period of three years, neither of which was approved by the authority of the Secretary of the Interior, both of said leases are void, because in violation of sections 2 and 5 of act of Congress of May 27, 1908."

It is clear, then, that the leases in controversy were in violation of the acts of Congress referred to, and void.

Can it be possible that the defendant could have secured some rights in these leases, notwithstanding their invalidity, as a tenant from year to year, under the Okla-

homa statute governing the relation between landlord and tenant?

Numerous decisions of the Supreme Court of this state disclose a settled purpose to leave the right and power to regulate and control the sale and disposition of restricted Indian land in the state of Oklahoma exclusively to Congress, and to deny the operation of state laws upon the restricted lands of Indian citizens. Among many illustrations of this principle, the following may be mentioned:

Sections 884 and 885, Rev. Laws 1910, allowing minors over 18 a limited right to contract are not applicable to a minor Indian over that age. F. B. Collins Investment Co. et al. v. Beard, 46 Okla. 310, 149 Pac. 846.

Majority rights authorized by sections 4427 to 4430, Rev. Laws 1910, to be conferred under certain circumstances by the district court on minors are not applicable to an Indian minor in the matter of the sale of allotted or inherited Indian lands. Brewer v. Perryman et al., 62 Okla. 176, 162 Pac. 791.

Partition cannot be had under the state statutes of allotted lands inherited by full-blood members of the Five Civilized Tribes. Coleman v. Battiest, 65 Okla. 71, 162 Pac. 786.

State statute emancipating a minor upon marriage is not applicable to a minor Indian in a matter concerning his allotted or inherited lands. Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Bruner et ux. v. Cobb et al., 37 Okla. 228, 131 Pac. 165.

District courts of Oklahoma are without jurisdiction to enter a valid judgment divesting an Indian minor allottee of title to his allotted lands by entering a decree quieting title in a party asserting title to such lands under void conveyances executed in violation of a federal statute prescribing the manner by which title may be acquired to such lands. Tidal Oil Company et al. v. Flanagan, 87 Okla. 231, 209 Pac. 729.

The statutes of Oklahoma relative to champertous conveyances do not apply to a conveyance of Indian lands by a full-blood Indian heir. His rights are exclusively fixed by the act of Congress of May 27, 1908. Miller et al. v. Grayson et al., 64 Okla. 122, 166 Pac. 1077.

In line with the principle laid down in the above cases and in numerous federal cases, our court in the case of Dowell et al. v. Brown, Guardian, surpa, quoting with approval from the case of Apple et al. v. Westheimer & Daube, 55 Okla. 532, 155 Pac. 623,

said, in speaking of the claim there made that the defendant in error was a tenant at will of plaintiff in error, and as such, entitled to obtain possession of the premises:

"Defendants' possession, right and equities as they designate them, in order to be such in fact, must depend on some prior, lawful, actual, contractual relations, or at least grow out of some act or relation not unlawful; otherwise, by circumvention, an object could be accomplished by indirection which could not be accomplished by direction. One could be guilty of the most flagrant violation of the inhibition imposed in reference to leasing full-blood Indian lands, and by artifice accomplish just what Congress intended to forbid.***

"We therefore hold that, as defendants were holding under the agricultural lease dated January 19, 1910, to run for the year of 1911, the lease dated June 30, 1910, to defendants, to run for five years from January 1, 1912, was void and in violation of the acts of Congress, surpa.***"

In the body of the Dowell et al. v. Brown opinion, the court said:

"***The trial court correctly held that the second and third leases involved herein were void. Counsel's second contention is that if said lease should be found to be void, then the defendant was a tenant at will of plaintiffs at the time of institution of this suit, and as such was entitled to retain possession of premises. We think that there is no merit in this contention; the leases in question being void, the defendant could claim no rights thereunder. * * * "

It is plain that if the right contended for by the defendant as a tenant at will under the state statute was allowed to spring from the illegal relationship existing under the void leases involved in the instant case, the purpose of Congress in respect of the laws which it has enacted for the sale and leasing of restricted Indian land would be defeated, The better rule is that no right, title, or interest whatever can be acquired in Indian lands under state laws, or upon equitable grounds, where such rights are based upon and grow out of some act or relation made unlawful by Congress itself. The methods prescribed by Congress are exclusive. The result of this doctrine is that a tenant under a lease contract made void by the act of Congress of May 27, 1908, is a mere trespasser upon Indian lands, and is bound to the owner for the fair rental value of the premises for the period of unlawful occupancy. Wrigley et al. v. McCoy, 73 Oklahoma, 175 Pac. 259.

Our attention has been called to the case of Cole et al. v. Bunch, 85 Okla. 38, 204 Pac. 119, as controlling upon the proposition insisted upon by the defendant in the instant

case. This case is clearly distinguishable, not only from the case at bar, but from the case of Dowell et al. v. Brown, supra, which furnishes the correct rule for our guidance in this case. In the Cole v. Bunch case there was no direct attack upon the leases in controversy, but the action was one to recover rent only, and the court did not find that the leases in that case were in contravention of the act of Congress and void, but on the other hand pointed out in the opinion that the leases could not be void merely because the Indian happened to lease his land prior to the first day of January of the year for which the land was leased. The courts have recognized that it is often necessary for the best interests of the Indian and to regulate the course of agriculture to lease his land prior to the first day of the year for which the land is leased.

Where a restricted Indian executes a lease upon his restricted land not invalid under the leasing regulations of Congress, we know of no reason why a tenancy at will might not ensue under appropriate conditions.

Having found that the leases in controversy were absolutely void and that no right of property based upon the conduct of Austin Jim in accepting rentals could grow out of such invalid leases, it is unnecessary to notice the further contention of the defendant that no inequitable conduct in the procurement of the leases by him was shown in the proof or alleged in the petition.

It follows that the judgment of the trial court must be affirmed.

By the Court: It is so ordered.