### S. S. & G. MINING CO. v. FULLERTON et al.

No. 16974—Opinion Filed Oct. 19, 1926.

1. **Indians—Quapaw Allotments—Invalidity of Ten-Year Mining Lease Executed Prior to Expiration of Former Lease.**

The authority granted a Quapaw Indian allottee by the provisions of the Act of Congress of June 7, 1897, to lease his lands for a term not exceeding ten years for mining or business purposes does not empower such allottee, during the term of a prior valid mining lease for ten years, three years of which have expired, to execute another mining lease for ten years to the same lessee upon the same land, since the taking of the new lease is in effect a lease in futuro and an attempt by the lessee to take a ten-year mining lease subject to a valid existing ten-year lease on the same property which still has several years to run in violation of the leasing statute.

2. **Same — No Rights in Occupant Under Void Lease Through Estoppel.**

No right in an occupant of restricted Quapaw Indian land holding as sublessee under a mining lease, void because executed in violation of the laws of the United States regulating the leasing of such land for mining purposes, based upon the principle either that the sublessee is estopped to deny the title of the original lessee, or that the original lessee is mutually estopped to deny his own title, can ever spring from the unlawful relationship thus existing, since to give effect to such occupancy in the manner stated would result in the involuntary alienation or incumbrance of the allotted land of such restricted land contrary to the restrictions imposed by Congress.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by S. C. Fullerton and W. W. Dobson against the S. S. & G. Mining Company, a business trust composed of A. M. Gaines, Jesse G. Starr, and Frank Sharp, in ejectment and to recover damages for the unlawful detention of real estate. Judgment for plaintiffs, and defendant appeals. Affirmed.

Frank Nesbitt, for plaintiff in error.

Ray McNaughton and E. C. Fitzgerald, for defendants in error.

Opinion by FOSTER, C. The defendants in error, S. C. Fullerton and W. W. Dobson, were plaintiffs, and the plaintiff in error, the S. S. & G. Mining Company, a business trust composed of A. M. Gaines, Jesse G. Starr, and Frank Sharp, was defendant, in the trial court, and the parties will hereinafter be designated as they appeared in that court.

The plaintiffs filed their petition in ejectment against the defendant in the district court of Ottawa county, and recovered a judgment for the possession of certain real estate described in their petition, and damages for the unlawful detention thereof from July 30, 1923, in the sum of $3,298.69.

The plaintiffs asserted title to the real estate described as the N. E. quarter of the N. E. quarter, sec. 36, township 29. range 22, in Ottawa county, under a certain mining lease dated the 10th day of February, 1920, from Te-meh-heh Quapaw to S. C. Fullerton for the term of ten years from the date of said lease. They further claimed that since the 30th day of July, 1923, defendant had unlawfully kept plaintiffs out of the possession of the land. appropriating to their own use valuable lead and zinc ores of the value of $50,000. A copy of the mining lease under which plaintiffs claimed title was attached to their petition.

The defendant alleged in its answer that the mining lease under which plaintiffs claimed was an overlapping lease, and void in that it overlapped a prior valid lease executed by the allottee, Te-meh-heh Quapaw, to S. C. Fullerton, dated July 23, 1911, and expiring ten years thereafter. It further alleged that it entered into possession of the real estate in controversy on or about the 8th day of May, 1919, under the lease of July 23, 1911, and continued in possession of said land under said lease, carrying on mining operations thereon until July 1, 1923, after which time the rights of the plaintiffs in said land fully expired, and that thereafter the plaintiffs had no right. title or interest of any character in said land.

In a cross-petition the defendant sets up title to said real estate through a mining lease executed subsequent to July 30, 1923, to Eagle Picher Lead Company, approved by the Secretary of the Interior, and by the lessee therein subleased to the defendant on July 30, 1924, and it asserted title and right of possession under said sublease and asked that its title be quieted, and that the min-

ing lease under which the plaintiffs claim be removed as a cloud on its title, and the plaintiffs permanently and perpetually enjoined from claiming or asse.:ting any title or interest in the said real estate. Plaintiffs filed an amended reply, in which they in effect denied the validity of the lease or July 23, 1911, and set up a mining lease executed by the allottee to plaintiffs on the 5th day of September, 1908, which expired by its own limitation on September 4, 1918, and that at the time they took their lease of February 10, 1920, there was no valid mining lease covering the.land in controversy.

The cause was tried to the court without the intervention of a jury. There was no conflict in the material facts as disclosed by the evidence at the trial. It disclosed that on. the 5th day of September, 1908, the allottee, Te-meh-heh Quapaw, executed and delivered to plaintiffs a mining lease expiring by its own terms on the 5th day of September, 1918; that on the 23rd day of September, 1911, and during the subsistence of the prior lease of September 5, 1908, the plaintiffs took another lease from the allottee, which by its terms expired on the 23rd day of September, 1921; that during the term of the 1911 lease the plaintiffs acquired from the allottee two other short term leases, to begin to run in the future, purporting to extend the term of the 1911 lease to July 22, 1923. On the 10th day of October, 1913, the plaintiffs sublet to O. S. Picher certain rights under their lease of July 23, 1911, together with the two short term leases referred to above, for a term ending July 1, 1923.

O. S. Picher, in turn, on July 14, 1917, subleased to the Defender Mining Company for the term ending July 1, 1923. On August 8, 1919, the Defender Mining Company in turn subleased to the defendant for the term ending July 1, 1923. Through its sublease from the Defender Mining Company, of August 8, 1919, the defendant entered possession of the land prior to February 10, 1920, under the 1911 lease, and the plaintiffs received royalties thereunder until July 1, 1923, the date of the expiration of the 1911 lease and the two short term leases extending the 1911 lease.

On May 25, 1918, the plaintiffs executed an unconditional release and cancellation of all mining leases held by them prior to that time, which included both the lease of September 5, 1908, and the lease of July 23. 1911, and thereafter took their lease of February 10, 1920, on which they base their claim of right to recover in the instant action.

The evidence further discloses that, subsequent to the lease of July 23, 1911, the plaintiffs, in an action brought against them in the United States Court for the Eastern District of Oklahoma by one Eward, pleaded and re.ied upon the 1911 lease as a valid lease, and ultimately prevailed in that litigation upon the strength of their asserted claim of validity of said lease of July 23, 1911.

In these circumstances the defendant complains that the trial court erred as a matter of law in not concluding that the lease of February 10, 1920, under which plaintiffs claim, was an overlapping lease and therefore void.

It is apparent that the validity of the lease of February 10, 1920, depends upon whether or not the lease of July 23, 1911, was a valid lease, for if the lease of July 23, 1911, is itself invalid as an overlapping lease, then the lease of. February 10, 1920, would have been executed at a time when there existed no valid lease upon the real estate, and being otherwise in conformity with the leasing regulations prescribed by Congress governing the leasing of lands by restricted Quapaw Indians for business and mining purposes, should be upheld.

It is clear then that the disposition to be made of the case here on appeal turns on whether the lease of July 23, 1911, was a valid lease. Defendant asserts its validity, and says that said lease being in full force and effect on February 10, 1920, and having then a term of approximately a year and a half to run, plaintiffs' lease overlapped the lease of July 23, 1911, and was therefore void under the leasing regulations of Congress.

They assert that its validity must be sustained upon two grounds: (a) Because the lease of July 23, 1911, being a lease from the same lessor to the same lessee on the same land, it operated as a surrender of the mining lease of September 5, 1908; and (b) plaintiffs having placed the defendant in possession under the lease of July 23, 1923, they are estopped to deny its validity.

By the Act of Congress of June 7, 1897 (30 Stat. 72), it was provided in part as follows:

"That. the allottees of land within the limits of the Quapaw Agency, Indian Territory, are hereby authorized to lease their lands or any part thereof for a term not exceeding three years for farming or grazing purposes or ten years for mining or business purposes."

Except as provided in the leasing provi-

sion of the statute just quoted, the allotment of Te-meh-heh Quapaw, under the Act of Congress of March 2, 1895, was restricted from alienation in the hands of the allottee at the time the various leases referred to above were executed.

On July 23, 1911, the plaintiff Fullerton had already occupied the allottee's land under the lease of September 5, 1908, for a period of some three years, and it seems to us that the plain effect of the lease of September 23, 1911, was to extend the term of the original lease by the space of approximately three years so that instead of confining the plaintiffs' tenure to the period of ten years, as provided by the leasing statute, he would be given continuous possession for a period of about 13 years.

In Balthrop v. Clark, 94 Okla. 294, 222 Pac. 520, this court in speaking of the lease under consideration in that case said:

"It appears that Austin Jim, deceased, was a full-blood Mississippi Choctaw Indian, and had received the land above described as a part of his surplus allotment.

"On the 11th day of March, 1912, he executed an agricultural lease to Porter Earhart for the term of five years from March 11, 1912, by which he was to receive the rental of $40 per annum, due and payable on the 11th day of March of each year during the life of the lease.

"On December 18, 1912, Porter Earhart sold this lease to the defendant.

"On the 1st day of March, 1913, and during the subsistence of the Earhart lease, Austin Jim executed to the defendant an agricultural lease on the land for a period of five years, beginning January 1, 1914, and ending December 31, 1918, for a consideration of $195.

"On December 17, 1914, still another lease was made between the same parties for a period of five years, beginning on that date and ending December 17, 1919. * * *

"Both the lease of March 1, 1913, and the lease of December 17, 1914, were executed and delivered during the continuance of a prior, valid, and subsisting lease, and the plain effect of these leases was to extend the period of the original lease to cover a period of time unauthorized by the Act of Congress referred to above. By the lease of March 1, 1913, the period of the original lease was enlarged and extended by the space of almost two years, and the lease of December 17, 1914, by the space of nearly three years."

The holding in the cited case is, that a lease by the same lessor to an assignee of the original lessee, covering the same land during continuance of a prior lease between the original lessor and said assignee, operated to extend the former lease beyond the period authorized by the leasing statute, and was in effect a lease in futuro.

There was no suggestion in that case that the former lease was surrendered by the lessee. Whatever may be in effect a transaction, where a lessee in a lease executed by an individual other than a restricted Indian takes a new lease from the lessor during the subsistence of a prior lease, as a cancellation of the former lease, such automatic cancellation cannot result in a transaction where the lessor is a restricted Indian, and the former lease has been executed for the full term authorized by law, for it has been determined, as a matter of law, by this court, that the taking of a new lease under such circumstances is in effect an attempt to extend the term of the original lease beyond the period authorized by the leasing statute. Such lease must be regarded as a lease in futuro, and made subject to the former lease within the rule laid down by the Supreme Court of the United States in the case of U. S. v. Noble. 237 U. S. 74, 59 L. Ed. 844, to the same effect as if the lessor had attempted to create hostile estates in different lessees, and no convenient rule of law governing real estate transactions generally can be invoked to defeat this result so far as the restricted lands of the Indian citizens are concerned.

As was said in U. S. v. Allen. 179 Fed. 13:

"The plan of the United States government in dissolving the Five Civilized Tribes of Indians and distributing their lands in severalty was a great governmental project, having for its object the social and industrial advancement of the Indians, and the various acts pertaining thereto must be construed in consonance with such purpose and not merely as real estate transactions. The relation of the government to the Indians is not to be measured by the law governing the ordinary relation of guardian and ward, nor are the limitations imposed on the alienation of land governed by the strict rules of law relating to grantor or grantee, but the United States, by virtue of its peculiar relationship to the Indians and to prevent the policy to be worked out through such legislation from being defeated, may enforce such restrictions on alienation in the courts although retaining neither a legal nor an equitable estate in the lands after the allotment."

The only exception to the rule prohibiting the taking of a lease in futuro by a lessee from an Indian lessor, is where the lessee is in possession under an agricultural

lease, and it is necessary, in order to control the course of agriculture, to have the second lease executed before the expiration of the first.

The general rule applicable to the situation disclosed by the facts in the instant case is stated in U. S. v. Noble, 237 U. S. 74, 59 L. Ed. 844, as follows:

"The authority granted to Quapaw Indian allottees by the provision of the Act of June 27, 1897, * * * modifying the general restrictions on alienation made by the Act of March 2 1895 (28 Stat. at L. 876, c. 188) to lease their lands for a term not exceeding ten years for mining, or business purposes, does not empower such an allottee to make a ten-year mining lease subject to a valid existing ten-year mining lease on the same property which still has several years to run."

See, also, Smith v. McCullough, 70 L. Ed. 386.

The next contention of the defendant is: Admitting for the sake of the argument the invalidity of a lease of July 23, 1911, the plaintiffs, on account of having placed the defendants in possession under that lease and having received royalties thereunder, are estopped to deny its validity.

The same infirmity arises here that arose in the argument under the former proposition. The effect of the lease of July 23, 1911, was to create a term in the lessee added to the term of the former lease of 1908 of approximately 13 years, or to create in futuro a three-year lease from the expiration of the first lease.

The allottee, Te-meh-heh Quapaw, was without power to create in the lessee a mining lease extending longer than ten years. The act of the parties in attempting to create the relationship of lessor and lessee between Te-meh-heh Quapaw and S. C. Fullerton for the term of 13 years, under whatever guise it was attempted, was an unlawful act, because it violated the plainly expressed terms of the leasing statute. No right in the defendant based upon any principle of estoppel or otherwise can be permitted to flow from the unlawful relationship thus created.

As was said in Apple v. Westheimer, 55 Okla. 532, 155 Pac. 623:

"Defendants' possession, right, and equities as they designate them, in order to be such in fact, must depend on some prior, lawful, actual, contractual relations, or at least grow out of some act or relation not unlawful: otherwise, by circumvention, an object could be accomplished by indirection which could not be accomplished by direction. One could be guilty of the most flagrant violation of the inhibition imposed in reference to leasing full-blood Indian lands, and by artifice accomplish just what Congress intended to forbid."

The argument that the plaintiffs are estopped to deny their own title under which they placed the defendant in possession, is based upon the mutual estoppel of the defendant to deny the title of the plaintiffs. If this rule of law should be applied in a transaction involving the void and unlawful lease of Te-meh-heh Quapaw, the defendant's sublessees could rightfully refuse to attorn to the Indian owner until such owner had reentered and taken possession under paramount title, thereby resulting in the involuntary alienation or incumbrance of the allotted land of Te-meh-heh Quapaw contrary to the restrictions imposed by Congress.

This court in Balthrop v. Clark, supra, in speaking of the lease involved in that case said:

"It is plain that if the right contended for by the defendant as a tenant at will under the state statute was allowed to spring from the illegal relationship existing under the void leases involved in the instant case, the purpose of Congress in respect of the laws which it has enacted for the sale and leasing of restricted Indian land would be defeated. The better rule is that no right, title or interest whatever can be acquired in Indian lands under state laws, or upon equitable grounds, where such rights are based upon and grow out of some act or relation made unlawful by Congress itself. The methods prescribed by Congress are exclusive."

We think the instant case should be disposed of in keeping with the leasing statute, and with the restrictions upon the alienation of the land of restricted Quapaw Indian allottees imposed by federal law, and when these paramount considerations are kept in mind, it is not too much to say that the conduct of the plaintiffs in dealing with Te-meh-heh Quapaw from time to time, as disclosed by the record, is not inconsistent with the legislative policy of Congress as reflected in these federal statutes.

Plaintiffs unconditionally canceled all of the void leases which they held prior to the time they took the lease of February 10, 1920, and at the time they took the lease upon which they rely in the instant case, there was no valid lease outstanding upon the allotment in question, since the only valid lease they ever had, to wit, the lease of September 5, 1908, had long since expired.

It is true that the plaintiffs reaped certain benefits to which they were not entitled under the lease of July 23, 1911, but the

defendant was in no wise prejudiced thereby, so far as its present claim of title is concerned, and this court does not now feel called upon to give effect in any manner to such unauthorized lease in favor of either party.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 518, §87. (2) 31 C. J. p. 518, §84 (Anno).