### ROGERS v. McMAHAN et al.

No. 27087.    May 24, 1938.

Clayton Carder, for plaintiff in error.

Morrill & Snodgrass, for defendants in error.

GIBSON, J. This appeal is from a judgment of the district court of Jackson county rendered in a proceeding arising as an incident to a foreclosure action there pending. The present controversy is between the mortgagor, Ollie J. Rogers, referred to herein as plaintiff, and Boyd McMahan, Nina Rawls, and the personal representatives of the estate of Stansell Whiteside, deceased, referred to herein as defendants, claimants, by virtue of contracts with plaintiff, to certain interests in the oil and gas rights in and under the mortgaged premises.

Said foreclosure suit was instituted November 25, 1933, by the Commissioners of the Land Office against plaintiff herein and one Taylor Bowles, the second mortgagee. The indebtedness due each mortgagee was approximately $13,000 and $700, respectively. On January 14, 1935, during the pendency of the aforesaid action, the plaintiff entered into a contract with her attorney, the said Stansell Whiteside, looking toward a plan for the payment of said indebtedness or the extension thereof to avoid foreclosure. By that contract it was agreed that the oil and gas lease upon the mortgaged premises, consisting of 240 acres, should be sold and the proceeds applied to the debts.

On January 16, 1935, the plaintiff, acting under the advice of her said. attorney, entered into a written contract with defendant McMahan, the material portion of which is as follows:

"Whereas, said second party desires to sublease, or sell, or drill an oil. well upon said land, it will be necessary to pay the consideration of this contract to the Commissioners of the Land Office of the state of Oklahoma in order to obtain a waiver of priority lien upon said mineral rights.

"Now, therefore, be it agreed, that the first party does hereby agree to convey to the said Boyd McMahan an oil and gas lease upon said 240 acres of land, upon regular Producer's 88 Form, providing for payment of $1 per acre rentals in the event no oil or gas is found on the premises for a period of five (5) years.

"It is also understood and agreed that the first party will, and does, hereby convey to the said Boyd McMahan a mineral deed, or royalty deed, to one-half (1/2) of the remaining mineral rights in said 240 acres of land, in consideration of which the said Boyd McMahan does agree to pay the sum of Two Thousand ($2,000) dollars."

On the same day, January 16th, the following contract was entered into between McMahan and defendant Nina Rawls:

"It is agreed upon the part of the said Boyd McMahan that he shall pay to the said Nina Rawls, to be deposited in the Altus National Bank, one-half of all money which he may receive from the sale, operation or production upon said 240 acres of land, after he has received such sums as it may be necessary for the said Boyd McMahan to have paid out in order to obtain the waiver of the prior lienholders upon said property, by reason of said liens.

"It is further understood and agreed that should oil be discovered on said land that the said Nina Rawls will apply such funds as may be deposited in said bank, under this contract, to the balance remaining unpaid upon said liens, should the first party so desire, but it is understood that if oil is not discovered that said second party shall use such funds in any manner she may see fit.

"It is also understood and agreed that after the said first party has paid such funds, as may be necessary to obtain release of said one-half royalty and said lease, or for the release of such oil and gas lease, that the first party will convey to Mrs. Nina Rawls 40 acres to be selected by him, out of said 240 acres, but said 40 acres is to be selected by him at such point as would not interfere with the making of a drilling contract upon said premises."

The latter agreement was entered into by Nina Rawls for the benefit of the plaintiff, who ratified the same by written contract with Nina Rawls on the same date.

On the same day, January 16th, Stansell Whiteside, as first party, entered into a contract with plaintiff, the material portion of which follows:

"Whereas, under this contract, entered into between the second party and Boyd

McMahan, the second party reserves one-half of the royalty interest.

"It is hereby agreed that the said Whiteside shall continue to represent the second party in said lawsuit and the negotiation of all transactions and representing her interest in said transaction and that none of said one-half royalty shall be sold by either of the parties hereto, except to apply upon said indebtedness and that after said indebtedness is paid, if it is paid, that the parties shall own said one-half royalty, equally, but it is understood and agreed that until said liens, including all mortgages and taxes, are fully paid that the first party has no interest, right nor claim in and to said one-half royalty, except that he shall have the right to object to the sale of the same and pay the second party should she desire to sell it, or any part of it, for less than what the first party might think its value."

Pursuant to the agreement with McMahan, plaintiff executed to him the oil and gas lease and the mineral deed, the latter conveying an undivided one-half interest in the oil and gas and other minerals in and under the 240-acre tract. McMahan paid to the Commissioners of the Land Office the sum of $2,000 and obtained a waiver of priority of its lien upon the lease and the undivided one-half interest covered by the aforesaid deed.

On January 22, 1935, plaintiff filed for record her affidavit repudiating the oil and gas lease and deed on the ground of fraud, and declaring her intention to cancel same. Thereupon Whiteside and McMahan filed their petition in intervention in the foreclosure action setting forth alleged damages resulting from the aforesaid affidavit, charging that the oil and gas lease by reason thereof could not be disposed of; that the plaintiff herein was insolvent and could not respond in damages, and that they were without adequate remedy other than through receivership to take charge of said lease, sell the same and impound the proceeds for proper distribution among the parties.

Receiver was duly appointed, the lease sold and the proceeds impounded, all without objection from plaintiff, and his report of the sale approved by all parties, and the court was requested to approve the acts of the receiver. Immediately thereafter all parties entered into a written contract wherein it was agreed that all should join in the oil and gas lease for the protection of the purchaser at the receiver's sale, but without waiving any of their respective rights arising out of the contracts theretofore entered into.

Several months thereafter, September 24, 1935, plaintiff filed her cross-petition seeking cancellation of all the contracts above mentioned, including the mineral deed and the oil and gas lease executed to McMahan. She charges fraud. As a second cause of action, she seeks damages for failure of McMahan and Whiteside to reconvey to her. In an amendment she offers reimbursement.

The receiver realized $3,600 from the sale of the lease, out of which sum, by order of court, McMahan was reimbursed for the $2,000 paid by him to the mortgagee for the waiver, the cost of receivership taken care of, and the second mortgage, by agreement of all parties, paid off and discharged, leaving in the hands of the court clerk a balance of $697.33 awaiting distribution. Plaintiff claimed that balance and asked that the court clerk be ordered to pay over the same to her.

The allegations of the cross-petition were duly placed in issue and the cause tried to the court, resulting in judgment against plaintiff on the issue of fraud. The balance of the proceeds from the sale of the lease was ordered to be divided equally, after payment of costs, between McMahan and the plaintiff.

Plaintiff says that the evidence affirmatively shows that the contract and conveyances to McMahan were obtained by fraud, are not supported by adequate, if any, consideration, and should have been canceled by the court.

We have given due consideration to the record in this case and have failed to discover any evidence tending to prove fraud on the part of McMahan or Whiteside in procuring the McMahan contracts and conveyances. All these transactions were apparently entered into by the plaintiff with full knowledge of all surrounding circumstances. She knew of the oil operations in the neighborhood, and knew the value of her land was thereby increased at the time. She acted under the advice of her sister, Mrs. Rawls, who is not charged with bad faith. There is nothing to show that the whole arrangement with McMahan was anything other than the normal culmination of an honest attempt to salvage all possible benefit from a situation portending only total loss. The fraud in these particular transactions was laid to Whiteside, who was related to McMahan by marriage. He also at that time occupied a fiduciary relationship toward plaintiff by reason of the fact that he was her attorney. But, notwithstanding the relationship between McMahan

and Whiteside, in his actions in procuring another to hazard money on an uncertain investment in order to save his client all possible loss, we find nothing that a good fiduciary might not have done under the circumstances.

It is charged that the consideration was so inadequate as to constitute evidence of fraud. While it is true that inadequacy of consideration may be evidence of fraud (Bruner v. Cobb, 37 Okla. 228, 131 P. 165), the courts should be hesitant in criticizing consideration when the same is based upon a highly speculative venture. However, we are unable to say that the consideration here was disproportionate to the present speculative value of the interests actually conveyed. The trial court was of that opinion, and we find nothing in the record to indicate that the court was mistaken in its views.

Plaintiff charges that the evidence affirmatively shows that the contract of Stansell Whiteside, above set out, was obtained by fraud and undue influence and should be canceled.

Regarding this contract, plaintiff says that the same, standing alone and segregated from the other transactions in question, was supported by adequate consideration in the form of valuable services rendered. But plaintiff charges that the contract is marked with fraud in that the same was a part of a general scheme participated in by Whiteside wherein, as plaintiff's attorney, he induced her to enter into the contracts with McMahan whereby she parted with substantial interests without remuneration.

Above we have said that the record failed to reveal evidence of fraud entering into the McMahan contracts. Therefore the Whiteside contract could not have been a part of a fraudulent scheme as charged. It was supported by adequate consideration, untainted by fraud, and therefore properly sustained by the trial court.

The judgment, with respect to the question of fraud, is fully supported by the clear weight of the evidence.

Plaintiff charges error to the court in dividing the balance of the proceeds of the lease sale equally between her and McMahan.

It is evident that the court in construing the contract of January 16th between McMahan and Mrs. Rawls treated it as recognizing in McMahan ownership of the leasehold interest on the entire 240 acres, and that McMahan had the right to dispose of the lease on the entire 240 acres. The language which provides that McMahan is to pay Mrs. Rawls "one-half of all money which he may receive from the sale, operation or production upon said 240 acres of land," is reasonably susceptible of meaning "one-half of all money which he may receive from the sale, operation or production of the lease upon said 240 acres of land," since the lease was the thing from which he had to realize the money to pay off the liens, and the contract with Mrs. Rogers shows that McMahan desired the lease for the purpose of subleasing, selling, or drilling. Therefore, upon sale of the lease, after paying certain items referred to, McMahan was to pay Mrs. Rawls one-half of the balance; that is, what was evidently considered one-half of the net receipts from the sale.

McMahan did not sell the lease. The receiver's sale, however, was in effect a sale by McMahan, as the court authorized the receiver to join in an assignment made by McMahan, and approved the sale made by such assignment.

The contract is somewhat ambiguous, but it is evident that if the sale of the 240-acre lease was consummated as permitted under the first part of the contract, it would be impossible to convey to Mrs. Rawls a 40-acre tract free and clear of the lease. Hence the intent to have the 40 acres free and clear of the lease could only be accomplished if McMahan retained the lease. The provision in respect to a drilling contract bears out this interpretation. We cannot, therefore, agree that Mrs. Rogers was entitled to one-sixth of the gross receipts from the sale of the lease. It was necessary to pay a second mortgage in order to sell the lease. The court authorized the payment of this mortgage, the payment to McMahan of $2,000 reimbursement, and the cost of the proceedings; then ordered the balance to be divided equally between McMahan and Mrs. Rogers. In this the court apparently did equity between the parties.

The judgment and decree is accordingly affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur.